# THE AMERICA.[1]

## MILLS v. THE AMERICA.

### (*District Court, S. D. New York.* November 12, 1887.)

COLLISION—TUGS—RULE OF THE STARBOARD HAND—RIGHT OF WAY—RISK OF COLLISION.

The tug Talisman, on her way from Weehawken to pier 5, New York, saw on her starboard bow the red light of the tug America, bound from Jersey City to Thirty-fifth street, New York. The Talisman attempted to cross the bows of the America, but was struck on her starboard quarter. The America slowed as the vessels approached, giving one whistle twice, and when the tugs were 50 to 100 feet apart gave an alarm signal, and reversed. She did not alter her helm. *Held,* that the Talisman was in fault for not avoiding the America, having the latter on her starboard hand; that the America was in fault, though she had the right of way, for not taking more effectual measures to avoid a collision as soon as she saw by the movement of the Talisman's lights that there was risk of collision; and that the damages should be divided.

*Goodrich, Deady & Goodrich,* for libelant.
*Biddle & Ward,* for claimant.

BROWN, J. The collision between the libelant's tug Talisman and the tug America occurred opposite Hoboken, between 11 and 12 o'clock at night, about one-third of the way across the river from the New Jersey shore. Considering that the America was on her way from Jersey City to the foot of Thirty-fifth street, New York, and the Talisman bound from Weehawken to pier 5, North river, I have no doubt that it was the America's red light, and not the green light, that was first seen by the pilot of the Talisman on the latter's starboard bow. The Talisman was, therefore, the one that was bound to keep out of the way of the America, while the latter had the right of way. The Talisman must be held in fault, because there was plenty of room for her to have kept out of the way by porting; and because she undertook to cross the America's bows to starboard, instead of passing port to port; and because the America did nothing to mislead the Talisman, or to thwart her in her duty of keeping out of the way.

As respects the America, the question of fault is less easy to determine. Some of the contradictions in the testimony cannot be reconciled. The greater fault is evidently on the part of the Talisman, for the reasons above stated. The America, according to the account of her captain, gave a signal of one whistle when the boats were, as he estimates, some 300 or 400 yards apart. Both of the Talisman's colored lights were then seen one or two points off the America's port bow. Getting no answer, the pilot ordered the engines slowed, and then repeated the same signal while seeing both of the America's colored lights. Directly after the last signal, he observed the Talisman's red light shut in, leaving her green light visible, which indicated that she was heading to-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

wards the New York shore, and across the America's bows. Thereafter he gave a danger signal of three short blasts, when the tugs were from 50 to 100 feet apart, and then ordered his engines reversed. He did not shift his helm at all. He also testifies that the Talisman swung about 8 points to port in crossing his bows, but came back somewhat under a port wheel just before the collision. The America's port stem fender struck and broke in the Talisman's starboard quarter; the latter kept on without stopping; and the pilot of the America, which was not injured, told the other to "mind next time how he crossed his bows."

Both tugs were unincumbered. The pilot of the America was unable to give any definite idea of the distance of the Talisman when she shut in her red light, which indicated that she was about to cross his bows. That is the turning point as to the question of the America's fault, because it determines the question of the America's means of avoiding the collision. He thought the distance was upwards of 200 feet, but less than 1,000. When he saw that the Talisman was crossing his bows, although he had the right of way, it was his duty to reverse at once, in order to avoid collision; because he knew that from that moment there was clear risk of collision, and reversal was necessary. Old Rule 21; *The Aurania*, 29 Fed. Rep. 99, 124, and cases there cited. Considering that the Talisman from that time until the collision, according to the testimony of the America, swung 8 points to port, and then somewhat back again, and that during a portion of this time she was going at nearly right angles to the line of the America's course; and considering further that before the second blast of one whistle the America's engines had been slowed, and, as the engineer testifies, her steam wholly shut off, and the tide being also ebb, I feel constrained to find that there must have been sufficient and reasonable opportunity for the America to have avoided a collision had she reversed her engine as soon as the Talisman's red light disappeared; and that the America is in fault for having delayed reversing longer than was justifiable. Had she reversed as soon as the intent of the Talisman was clear, she would have been without fault in this respect. *The Greenpoint*, 31 Fed. Rep. 231. Considering also that the America's bow struck the Talisman aft of amidships, I can hardly doubt that the America could also have avoided the collision had she starboarded her wheel when the Talisman was seen intending to cross her bows, even without reversing her engine.

The damages and costs must therefore be divided.