## THE BALTIMORE.[1]

### NEW YORK & C. S. S. Co. *v.* THE BALTIMORE.

*(District Court, S. D. New York. March 22, 1888.)*

1. COLLISION—STEAMER AND FERRY-BOAT—CROSSING COURSES.
    The steamer C., while coming down the North river, and approaching her wharf in New York city, was run into by the ferry-boat B., which was nearing her slip in New York on her trip from Jersey City. Each vessel signaled her intention to pass ahead of the other, and each kept on her course until within some 200 feet of the place of collision, when both reversed. *Held,* that the C. was in fault (1) for not avoiding the B., which was on her starboard hand, and not signaling in time; (2) for attempting to pass to the left, when that course was not necessary, without a previous understanding by signal with the ferry-boat; and (3) for not reversing sooner. *Held,* that the ferry-boat was also in fault, though she had the right of way, for not stopping and backing when the purpose of the C. to go ahead became clear, and it was manifest that the C. could not, or would not, by her own efforts, avoid collision.

2. SAME—ENTERING SLIPS—RULES.
    Ferry-boats must observe the usual rules of navigation when not so near their slips that observance of such rules will occasion embarrassment in entering.

In Admiralty. Libel for damages.
*H. D. Van Orden,* for libelant.
*Biddle & Ward,* for claimant.

BROWN, J. At about half past 7 in the morning of September 15, 1886, as the libelant's side-wheel steamer Catskill, was coming down the North river and approaching her wharf at the foot of Jay street, she came in collision with the ferry-boat Baltimore, which was coming up from the Jersey City ferry to her slip at Desbrosses street. The starboard bow of the ferry-boat struck the starboard bow of the Catskill about 50 feet

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

from her stem, and penetrated her side about seven feet, doing her very considerable damage, for which this libel was filed. The place of collision, as I find, was about 500 feet off the end of pier 27, new number, at the foot of Hubert street, and about 650 feet below the Desbrosses-Street slip, and about 1,100 feet above the pier at the foot of Jay street, where the Catskill was to land. Each side claims that its own boat was stopped at the time of the collision. I am satisfied, however, that this was not the case as respects either. The Catskill, until she had passed Desbrosses-Street ferry, was running at the rate of 10 or 11 knots, being then about six or seven hundred feet off the ends of the piers, and heading for her pier at the foot of Jay street. After passing that slip, she gave a signal of two whistles to the ferry-boat, indicating that she would pass ahead of her; she next gave different signals to three or four other boats which were lower down in the river; and then, on perceiving that the ferry-boat was not giving way, she gave the order to stop and reverse her engines when within about 200 feet of the place of collision. The ferry-boat was coming up the river, heading for the end of the second pier below her slip. The Catskill was observed a third of a mile distant. Three separate signals of one whistle, each at short intervals, were given, indicating that she would go ahead of her. No answer was heard until they were quite near. The order to reverse was given about 200 feet only from the place of collision, and only three and a half or four turns of the engine backward were obtained before they struck. These circumstances, with the character of the wound, leave no doubt that both vessels had considerable headway at the moment of collision. Both boats had long been accustomed to run on their respective lines; the course and intention of each were perfectly understood by the other. Each has invoked in its own favor the ruling in the case of *The John S. Darcy* and *The Isaac L. Fisher*, 29 Fed. Rep. 644, claiming she had a right to be unobstructed while making her slip or wharf. I do not think that rule is, in the present case, applicable to either; for the reason that the place of collision was not immediately adjacent to the landing place of either, and because both could have pursued the ordinary course of navigation, according to the rules, without causing embarrassment to either in making her slip. The place of collision was, as I have said, some 1,100 feet above the wharf of the Catskill, and some 650 feet below the slip of the Baltimore. The Catskill could have passed to the right without difficulty; and the Baltimore could, without the slightest embarrassment, have stopped, and gone astern of the Catskill, as, too late, she endeavored to do. I cannot find, therefore, that there was in fact any special circumstances which, under the twenty-fourth rule of navigation, made a departure from the ordinary rules necessary.

The primary obligation rested upon the Catskill to keep out of the way, as she had the Baltimore on her starboard hand. She was in fault —*First*. For not signaling to the Baltimore earlier than she did. This was first done at less than half the distance required by the inspector's rules. *Second.* She was further in fault for undertaking to pass to the left when that course was not necessary and without having first had a

common understanding by an acquiescing signal from the Baltimore, when she was not sufficiently in advance to enable her to pass ahead of the Baltimore without danger, or without assistance from the latter. The maneuver was, therefore, at her own risk. *The City of Hartford*, 11 Blatchf. 72, 74; *The Fanwood*, 28 Fed. Rep. 373; *The Vanderbilt*, 20 Fed. Rep. 650; *The Nereus*, 23 Fed. Rep. 448. *Third.* For not reversing sooner when the ferry-boat was seen approaching near at considerable speed, and the danger of collision was manifest.

As respects the Baltimore, the case is similar to many others, in which, notwithstanding the primary fault is that of the vessel bound to keep out of the way, the other vessel is also held in fault for not stopping and backing as soon as the purpose of the former vessel to go ahead was clear, and when it was manifest that the other could no longer, by her own efforts, avoid collision. *The Columbia*, 25 Fed. Rep. 844; *The Frisia*, 28 Fed. Rep. 249; *The Fanwood*, Id. 373; *The Aurania*, 29 Fed. Rep. 99. So long as the vessel bound to keep out of the way has clearly time and space enough to do so, and there are no certain indications of any contrary intent, the other vessel has a right to presume that the former will do her duty, and is not bound, under rule 21, to stop and reverse. When that limit is passed, rule 21 requires immediate stopping and reversing, if necessary to avoid collision. The pilot of the Baltimore in this case did not stop till much beyond that limit. He had special reason to be upon his guard, because there were several vessels below, to which the Catskill was obliged to pay attention; and because he got no response to several of his own signals to the Catskill. The course of the Catskill was plain. She was nearing the shore, evidently making for her wharf, and unless she sheered to the westward some considerable time before reaching the place of collision, which she did not do, it would be difficult for the ferry-boat even to reach her slip by going through the comparatively narrow passage to the right, or to the eastward of the Catskill. The Catskill, instead of sheering to the westward, as she might have done to make room for the Baltimore to pass easily to the right, manifested from the first a contrary intention; she continued on her course to run ahead of the Baltimore at rapid speed. The pilot of the Baltimore saw what she was doing, and knew, or ought to have known, her intentions; but he did not reverse until within about 200 feet of the place of the collision, long after the course and the intention of the Catskill to cross his bow were plain. The pilot knew that by backing earlier he could not possibly do any harm, nor in the least thwart the purpose of the Catskill. The right of way is not a right to run into unnecessary collision. *The Non Pareille*, 33 Fed. Rep. 524, and cases cited; *The Beryl*, 9 Prob. Div. 137. Notwithstanding the fact, therefore, that the primary fault was the Catskill's, in presuming that the ferry-boat would give way to her, and in attempting to run ahead upon that expectation, the ferry-boat must also be held to blame. The great stake in the lives and property of innocent persons forbids any relaxation of the rule that requires, in the face of an impending collision, that each boat shall take such timely and suitable measures to avert it as are

within her power, without reference to the original so-called right of way. The damages and costs must therefore be divided. The libelant is entitled to a decree for half his damages and costs; and a reference may be taken to compute the amount, if not agreed upon.