(12 Misc. Rep. 362.)

JUNG v. STARIN.

(Superior Court of New York City, General Term. May 6, 1895.)

1. NEGLIGENCE—CONCURRENT ACTS—WHO LIABLE.
     A shipowner is liable to a passenger on his vessel for injuries sustained in a collision caused by the concurrent negligence of the colliding ships.

2. COLLISION—QUESTION FOR JURY.
     Plaintiff, while a passenger on a barge in tow of defendant's tug T., was injured by collision of the barge with the tug boat U., towing two schooners. The T., being on the starboard side of the U., signaled that she intended to cross the U.'s bows, which signal was responded to, directing her to proceed, whereupon the T. kept her course. At the time of the signal the stern of the T. was hidden by the point of an island, and the pilot of the U. did not know that she had a tow, and, when that fact became apparent, it was too late to avoid the collision. *Held*, that the question of defendant's negligence should have been submitted to the jury, though Act Cong. March 3, 1885, art. 16, provides that in danger of collision the ship which has the other on her starboard side should keep out of the way, and article 22 provides that, where one of two ships has to keep out of the way, the other shall keep her course, as defendant would be liable, notwithstanding the fact that he complied with the rules of navigation, if, by the adoption of reasonable precautions, he might have avoided the collision.

Appeal from jury term.

Action by Margaretha Jung against John H. Starin for personal injuries sustained while a passenger on defendant's ship. The complaint was dismissed, and plaintiff appeals. Reversed.

The action is by the plaintiff to recover $5,000, damages for personal injuries. In consequence of a collision between defendant's fleet, in tow of his steamboats Hunt and Titan, and another fleet of two schooners, in tow of the tug Unit, belonging to other parties, the plaintiff, who was aboard an excursion barge in defendant's fleet, was violently thrown down and injured. Defendant's fleet consisted of the steamboat Thomas A. Hunt, to either side of which was attached a barge; the steamboat being further in tow of the tugboat Titan. As this fleet was going north on the east side of Blackwell's Island, and about to round the northerly point of that island, intending to make for the shore on the New York side at Eighty-Sixth street, the tug Unit was seen to come up on the westerly side of Blackwell's Island, with

two schooners in tow. The account of the collision furnished by the plaintiff's witnesses proves that the tugboat Unit, with a barge attached to each side, was proceeding up the East river on the New York side of Blackwell's Island; that the tide was running flood, about six knots an hour; that there was practically no wind; and that she was going under her own steam, at the rate of two knots per hour, making, in addition to the tide, a speed of about eight miles an hour by land. When the fleet had arrived at a point about opposite Eighty-Third street, the tug Titan, of the defendant's fleet, was seen to round the point of Blackwell's Island, heading for Eighty-Sixth street. When first seen she gave one whistle, as a signal that she intended to cross the bows of the Unit. To this signal the Unit responded with one whistle, signifying that she understood, and that the Titan should proceed. At the time the latter blew the whistle, the end of her stern was hidden by the point of the island, and it was not apparent to the Unit party that she had other vessels in tow. Within a few seconds after the answering whistle of the Unit, the Titan's stern with the hawser attached came in view. The Unit thereupon blew alarm whistles, and reversed the engines. The Titan continued in her course for about half a minute. Then the hawser between her and the Hunt was cut, and the latter veered towards the point of the island, and came in collision with the Unit fleet. The pilot of the Unit testified that he gave the whistle for the Titan to proceed, for the reason that there was room enough for the latter to pass in safety, and he did not then know that she had anything in tow. If there had been nothing in tow of the Titan, there would have been no collision, for she passed the Unit's fleet in safety. The trouble came with the tow, for not only had her pilot to take the Titan across, but the Hunt and her barges had to follow wherever she led, taking about four times as long to pass any given point as if the tug had been alone. At the conclusion of the evidence, the complaint, on motion of the defendant, was dismissed, upon the ground that the collision was caused by the negligence of the Unit in failing to observe the rules of navigation, and that no negligence was shown on the part of the defendant's fleet. From the judgment entered upon this direction, the plaintiff appeals.

Argued before SEDGWICK, C. J., and McADAM, J.

Chas. O. Maas and W. V. Goldberg, for appellant.
Goodrich, Deady & Goodrich, for respondent.

McADAM, J. To recover, it was not necessary to prove that the collision was caused by the sole negligence of the defendant's fleet. It was sufficient to establish that the plaintiff's injuries were the result of the joint or concurring negligence of the two fleets which collided. Shear. & R. Neg. § 58; Barrett v. Railroad Co., 45 N. Y. 628; Phillips v. Railroad Co., 127 N. Y. 657, 27 N. E. 978; Mooney v. Railroad Co., 2 City Ct. R. 366; Collins v. Railroad Co. (Super. Ct. N. Y.) 18 N. Y. Supp. 779. And, to justify the dismissal of the complaint, the direction must bear the crucial test that no construction of the evidence or inferences to be drawn from it would warrant a submission of the issue to the jury.

The defendant, to sustain his contention, relies upon rules of navigation which it is claimed establish his freedom from fault. He asserts that his fleet had the right of way when the Titan blew the first whistle, and, as the Unit signaled back that the claim was understood and would be respected, that the Titan had a right to proceed. The argument is supplemented by the following statement and citations:

(1) The Unit, having the Titan on her starboard hand, was bound to keep out of her way, under article 16 of the act of congress passed March 3, 1885,

which reads as follows: "If two ships under steam are crossing so as to involve risk of collision, the ship which has the other on her starboard side should keep out of the way of the other."

(2) The Titan's fleet had the right of way, and was bound to keep her course, under article 22 of the same act, which is as follows: "Where by the above rules, one of two ships has to keep out of the way, the other shall keep her course."

These rules might have been easily followed by the pilot of the Unit if he had seen the Titan and her tow, which was some 200 feet behind. But Blackwell's Island obstructed the view of the hawser, which could not be seen when the signals were exchanged, and consequently the pilot of the Unit did not know that the Hunt and the two barges, so far behind the Titan, formed part of a tow the latter had. While the Unit had the right to take the South Channel (as it is called), and the Titan the North Channel (as it is called), the Titan's pilot must have known that he could only take his tow in safety across the South Channel by making known to vessels going northward in that channel and on that flood tide the extent of (what was to them) the invisible tow he had in charge. Part of this danger would have been obviated if the Titan had taken the South Channel, as this led directly to the dock at Eighty-Sixth street, where her pilot intended to make a landing. The pilot of the Unit did not know until it was too late to extricate his fleet from the impending danger that the Titan had three vessels in tow, and the collision which followed was inevitable. The Titan might have continued her course further beyond the northern extremity of the island, and thus her tow would have been exposed to the view of all northerly going vessels, and a signal claiming the right of way would then have been intelligently understood and followed by them. If this had been done, the Unit might have given a different signal, or extricated herself by a change of course, and no harm would have followed. As it was, her pilot had no alternative but blow the alarm whistles and reverse the engines; and, with the flood tide running, these, which were the only precautionary measures at hand, proved inadequate.

The facts presented were sufficient to require the submission of the question of negligence to the jury. To put it mildly, it was a matter about which minds might differ, and should not have been disposed of as involving only a question of law for the court.

In actions for injuries resulting from the collision of vessels navigating public waters, the question is one of negligence on the part of those in charge of the respective vessels, and the omission of either or both to conform to legislative enactments is but one of the circumstances to be considered in ascertaining the proximate cause of the injury. Hoffman v. Ferry Co., 68 N. Y., at page 390.

In commenting on the right of way, the court, in the case of The Baltimore, 34 Fed. 660, said:

"The right of way is not a right to run into unnecessary collision. * * * The great stake in the lives and property of innocent persons forbids any relaxation of the rule that requires, in the face of an impending collision, that each boat shall take such timely and suitable measures to avert it as are within her power, without reference to the original so-called 'right of way.'"

A blind adherence to the rules of navigation is not required by the rules themselves, and care and diligence must be used in determining whether in a given case they should be strictly pursued.    Cooper v. Transportation Co., 75 N. Y. 116, 119.    Text writers and adjudged cases agree that no vessel is justified by a pertinacious adherence to a rule for getting into a collision with a ship which she might have avoided.    Pars. Shipp. & Adm. 580; Cohen, Adm. 207, 208; Allen v. Mackay, 1 Spr. 219, Fed. Cas. No. 228; The Sunnyside, 91 U. S. 208, 223; Blanchard v. Steamboat Co., 59 N. Y. 292, 299; The Aurania, 29 Fed. 98, 124; The America, 32 Fed. 845.    Each vessel must take such a course and direction as will be least likely to injure the other, and will be best calculated to avoid a collision; and that vessel which has the greatest facilities for choosing and taking its adopted course, the most facile and available motive power, and consequently the greater control over its own movements, is called upon to give the preference to the other, and yield to it in the choice of routes.    This rule is applied to meet the necessities of individual cases resulting from the state of the wind or tide, as well as to the meeting or passing of vessels propelled by steam by those under sail, and the meeting of steamers unincumbered and free with those incumbered with tows or other hindrances.    Blanchard v. Steamboat Co., supra; The Syracuse, 9 Wall. 672.

In proceedings in admiralty brought by the Isle of Pines (one of the tow of the Unit) against the Unit and Titan, to recover damages growing out of this same collision, Judge Brown found on the facts that neither the Unit nor Titan "kept necessary lookouts or exercised the reasonable precautions which are absolutely necessary to avoid collision in crossing around the upper part of Blackwell's Island in a strong flood tide"; and, under the rule prevailing, both vessels were held liable for the damages done.    The plaintiff is entitled to have the opinion of a jury on the facts as presented here.    They may possibly reach a conclusion similar to Judge Brown's.

In commenting on the facts, we have accepted those most favorable to the plaintiff, because the trial judge dismissed the plaintiff's complaint without calling upon the defendant to explain or give his version of the collision.    Probably, upon another trial, it may be made to appear that the captain of the Unit saw or should have seen the hawser attached to the Titan, or that the Titan's captain was justified in acting on the belief that the pilot of the Unit did see the hawser at the time the Unit gave the responsive whistle to go ahead, and that the Titan was therefore blameless in proceeding on her course; but these questions, appropriate for a jury, can only be considered after both sides have concluded their proofs.

For these reasons, which make it unnecessary to consider the exceptions taken to the exclusion of expert testimony, the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.