MARGARET HANRAHAN, as Administratrix, etc., of MATTHEW HAN-RAHAN, Deceased, Appellant, *v.* GEORGE COCHRAN, Respondent, Impleaded with CHARLES W. KNAPP.

Vol. 12.
App. Div.
12    91
43   137

*Persons racing horses illegally are joint tort feasors — each may be held liable for an injury done by the other — degree of care required — toleration by the city of racing in the street.*

One Hanrahan, while crossing a street in the city of Syracuse in a sleigh, at a street crossing, at which his view was somewhat obstructed, was mortally injured by being run into by the horse and sleigh of one Charles W. Knapp, who was racing with George Cochran, in violation of section 147 of the Penal Code, which forbade racing within a mile of a place where a court is actually sitting, and in violation of a city ordinance which forbade immoderate driving. The sleigh of Cochran passed just behind that of Hanrahan.

In an action brought to recover damages for the death of Hanrahan, the complaint was dismissed as to Cochran.

*Held*, that this decision was erroneous;

That as both of the defendants were, at the time of the accident, engaged in the commission of an unlawful act, both were trespassers and might be sued jointly, as each one was liable for the injury done by either;

That it was not necessary, in order to establish liability on his part, that Cochran's sleigh should have struck Hanrahan, as it was enough that the jury might have found that the accident would not have happened had not Cochran contributed to it by being engaged in the commission of an unlawful act;

That the defendants must be held to a degree of vigilance and care commensurate with the dangers of the situation;

That as racing in the street was forbidden, it was immaterial that the street had been used for racing horses, with the apparent consent or toleration of the officials of the city of Syracuse.

APPEAL by the plaintiff, Margaret Hanrahan, as administratrix, etc., of Matthew Hanrahan, deceased, from so much of a judgment of the Supreme Court, entered in the office of the clerk of the county of Onondaga on the 5th day of December, 1895, as directs that the complaint herein be dismissed as to the defendant George Cochran upon a nonsuit granted by the court as to the defendant George Cochran after a trial before the court and a jury at the Onondaga Circuit.

The court, at the close of the plaintiff's evidence, granted a nonsuit as to the defendant Cochran. The trial proceeded as to the defendant Knapp, against whom the jury rendered a verdict of $5,000. The action was brought by the administratrix to recover damages for injuries resulting in the death of Matthew Hanrahan, the husband of the plaintiff, occasioned by his being run into while driving across Genesee street, in the city of Syracuse, by a horse and sleigh passing along Genesee street, while the defendants were racing their horses on that street. Genesee street is one of the oldest streets in the city, running easterly and westerly through the heart of the city, and occupied extensively for business and travel. Plum street intersects Genesee street, running north and south; and 775 feet west of Plum street Genesee is crossed by Leavenworth avenue, a street parallel with Plum street. At the time of the injury to the intestate Genesee street was paved with asphalt pavement, forty feet wide between the curbs. The deceased was attempting to cross Genesee street on Plum, going south. On the

App. Div.] FOURTH DEPARTMENT, DECEMBER TERM, 1896.

north side of Genesee street, extending from Plum to Leavenworth avenue, there were two rows of trees, the first row about five feet from the curb on Genesee, and the other nineteen feet from the curb. Between these rows of trees was the sidewalk. On the northwest corner of Plum street, at its intersection with Genesee, was a large residence, with a picket fence six feet high, so that persons passing along Plum south to cross Genesee would have their view very much obstructed west on Genesee until they had reached beyond the curb and into the street itself. At the time of the accident the sleighing was fine, sleighs were passing up and down Genesee, and a large number of people stood on both sides of Genesee and in the gutter at the intersection of Plum and Genesee, watching what was transpiring upon the streets. The deceased had a horse and a delivery sleigh, the bottom of the seat of which was about thirty-four inches from the ground, and his rig, horse and sleigh, was about sixteen feet long. The principal witness in the case discovered the deceased attempting to cross Genesee from Plum, and saw his horse emerging through the crowd, apparently upon a walk, and when he found himself upon the street he quickened the horse's pace, glancing, as the witness thought, toward the west, with the obvious purpose of getting across the street as soon as possible; while in about the center of the street his rig was struck by the horse and cutter of the defendant Knapp, and the result was that the deceased was fatally injured. The horse and cutter of the defendant Cochran went by the rear of the deceased's sleigh, the testimony showing that when he did so the space between his rig and the rear of the deceased was from two inches to two feet. The defendants were driving from the west to the east, between Leavenworth-avenue and Plum street. They were racing their horses to the fullest possible extent that the animals were capable of, and going at a rate of a mile in less than three minutes, and when they approached a point within about 150 feet of where the intestate was struck they were going, in the language of the witnesses, "neck and neck," and Cochran was shouting to the extent of his voice to his horse to make it go faster. They were side by side, or nearly so, at the time of the accident, their two sleighs being from two to four feet apart. The testimony of the defendant Cochran, taken before a coroner's jury, was read in evidence, which

FOURTH DEPARTMENT, DECEMBER TERM, 1896. [Vol. 12.

disclosed that when he was about halfway between Leavenworth avenue and Plum street, a distance of over 300 feet, he discovered the deceased attempting to cross Genesee on Plum street. The accident occurred between four and five o'clock in the afternoon of February 16, 1895, and the intestate died on the eighteenth. The accident occurred within half a mile of the court house in Syracuse, where a court was actually sitting. By section 147 of the Penal Code it is made a misdemeanor for a person to be concerned in any racing, running, or other trial of speed between horses or other animals, within one mile of the place where a court is actually sitting. There was also in force at that time an ordinance of the city of Syracuse, which was as follows: "Any person who shall immoderately drive or ride any horse or other animal, whether attached to a private or public ambulance or other vehicle, in any avenue, street, alley or lane in the city, shall be subject to a fine of not less than five dollars nor more than fifty dollars, or to imprisonment in the penitentiary in the county for not less than ten days nor more than thirty days."

*A. T. Benedict,* for the appellant.

*William S. Jenney,* for the respondent.

WARD, J.:

The defendants at the time of the accident that resulted in the death of the plaintiff's intestate were engaged in the commission of an unlawful and criminal act, and in *Scott* v. *Shepherd* (2 Wm. Black. 892), the famous squib case, DE GREY, Ch. J., says: "Every one who does an unlawful act is considered as the doer of all that follows."

While the trespass that resulted in the death of Hanrahan was not willful or intentional on the part of the defendants, nevertheless it was a question for the jury to determine whether the act of fast driving, in which both defendants participated side by side in a crowded street in a great city, under the circumstances of this case, was not negligence on the part of these defendants and of each of them which was the proximate cause of the death of the decedent. The fact that the defendants were violating the law and an ordinance of the city was proper to be submitted to the jury upon the

question of the defendants' negligence. (*Jetter* v. *The New York & Harlem Railroad Co.*, 2 Abb. Ct. App. Dec. 458; *Knupfle* v. *The Knickerbocker Ice Co.*, 84 N. Y. 488, and cases there cited.)

It is claimed by the respondent, and such seems to have been the conclusion of the trial court, that because the sleigh of the defendant Cochran did not actually collide with that of the deceased, he was not liable for the injury which resulted from the collision. We cannot concur in this view.

From the statement of facts above given it will be seen that these defendants were acting together and in concert in this race. It was the race that created the condition that resulted in the accident. But for this race the jury may well have found, and we think we are justified in saying from the evidence, that the injury would not have occurred, so that the defendant Cochran contributed, by being engaged in this unlawful and forbidden performance, under the circumstances of this case, directly to the accident. Assuming that these two men had been upon trial for manslaughter for the negligent killing of the deceased, would it have been of any consequence that the blow that was impelled by the act of both of these defendants was only actually struck by but one of them? We assume not.

If an act done cause immediate injury, whether it be intentional or not, trespass lies, and if done by the co-operation of several persons, all are trespassers, and all may be sued jointly, for one is liable for the injury done by all, but it must appear that they acted in concert, or that the act of the one sued ordinarily and naturally produced the act of the others. (*Guille* v. *Swan*, 19 Johns. 388, and cases cited; *Jung* v. *Starin*, 33 N. Y. Supp. 650; *Barrett* v. *The Third Avenue Railroad Company*, 45 N. Y. 628; *Colegrove* v. *The N. Y. & Harlem R. R. Co.*, etc., 6 Duer, 382; affd., 20 N. Y. 492; *Slater* v. *Mersereau*, 64 id. 138; *Burnham* v. *Butler*, 31 id. 480; *Pollett* v. *Long*, 56 id. 200; *Scott* v. *Shepherd*, *supra*.)

In *Burnham* v. *Butler* (*supra*) a number of teams were traveling upon a highway in St. Lawrence county attached to sleighs in which the owners were returning from a town meeting. The defendants occupied the two rear sleighs; they got to racing. The hindmost team turned out to pass the team next before it. The last-mentioned team sought to prevent the passage, and hence the race.

They raced side by side until they came along by Mr. Center's sleigh, which was the third sleigh from behind, and Center's horse, getting frightened, shied to the left, struck a snow bank. Center was dragged a short distance ; his horse ran away and struck the plaintiff's cutter, and injured his horse and cutter. Held, that the racers were responsible for this injury to the plaintiff upon the principle as has been asserted in the cases cited.

We must hold that these defendants, under the circumstances of the case, in racing their horses, should be held to a degree of vigilance and care commensurate with the dangers of the situation. They were cognizant of the facts. They knew that pedestrians and owners of vehicles, in the exercise of an undoubted right, would be passing along Genesee street, and crossing from streets in front of them, and they might reasonably have anticipated some such accident as did occur, and yet the defendant Cochran, in face of the facts and of the further fact that he saw the deceased attempting to pass along in front of him on Plum street, did not abate the speed of his animal, but urged it to further exertion.

In behalf of the defendant Cochran it is earnestly contended that the trial court was justified as a matter of law in taking the case from the jury upon the ground that the deceased was guilty of contributory negligence. From the record before us, we assume that the same objection was urged at the trial as against the plaintiff's recovery against the defendant Knapp, as the objection would have been equally fatal in his case as in the case of Cochran, but the case was sent to the jury in the *Knapp* case, and we assume that the learned trial judge held that it was a proper case for the jury upon the question of contributory negligence. While it was the duty of the deceased not to plunge into a manifest danger upon a highway, it does not by any means appear, under the circumstances detailed and the difficulties that prevented his seeing as he attempted to cross Genesee street from the north, that he was cognizant of the approach of these horses at their high rate of speed. He was attending to crossing the street surrounded by embarrassment and crowds, watching his own horse, and we are not to assume that, although he might have seen the approach of the defendant, and heard the shouting of Cochran, he did see or hear the approaching danger, or that he was bound to do so.

The highways are for the use of the public, and persons using them have the right to assume that they are reasonably safe for travel and use, and they are not bound to be watching for such acts as resulted in the death of the deceased in this case. The question of contributory negligence, like that of the defendant's negligence, should have been submitted to the jury.

Of the several exceptions taken upon the trial as to the evidence, we will notice but one.

The defendant was permitted to prove, over the objection of the plaintiff, that Genesee street had been frequently used, and, for some period of time, for racing horses, with the apparent consent or toleration of city officials of the city of Syracuse. The fact that others had violated the law and the ordinances of this city forms no excuse or justification for the defendants. The only possible view in which the evidence could be material would be upon the question of contributory negligence, and then it would not be material unless it were shown that the deceased had knowledge of the fact thus sought to be proved, and for that reason should have used more caution in attempting to cross the street. The fact of such knowledge nowhere appears in the case. It cannot be inferred from the fact that the deceased lived in the city and sometimes crossed this street. To make this evidence competent, knowledge of the facts should have been brought directly home to the deceased. The admission of the evidence was error.

The judgment dismissing the complaint against the defendant Cochran should be reversed and a new trial granted as to him, with costs to abide event.

All concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.