CHARLES S. SANFORD, Respondent, v. WILLIAM BRADY and JOHN WELCH, Appellants.

*Negligence — motor vehicles — collision on highway — joint tort feasors — racing.*

Appeal by the defendants, William Brady and John Welch, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Greene in favor of the plaintiff on the 24th day of November, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 27th day of November, 1916, denying the defendants' motions for a new trial made upon the minutes.

Judgment and order affirmed, with costs. All concurred, except Woodward, J., who dissented in part, with opinion, in which Sewell, J., concurred.

WOODWARD, J. (dissenting): At about ten o'clock in the evening of August 15, 1916, the defendants met at the Urlton Country Club, situate upon the State highway between Coxsackie and Greenville, in Greene county. The defendant Welch had a Mercer car and the defendant Brady a Hudson super-six. The Urlton Country Club appears to be a saloon and dance house, and while the defendants were there several drinks were taken, and the defendants danced with some young women, and it was proposed that they go in the cars to another saloon and dance house known as "Karnicks." There appears to have been some suggestion on the part of Welch that he would beat Brady to Karnicks, but it is difficult to conceive of the matter as anything more than banter. The defendants each entered their cars, with the friends who were present and invited, and started for Karnicks. When about half the distance had been traversed, and while rounding a sharp curve, Welch, whose car was in the lead, discovered the light of plaintiff's car coming from the opposite direction, and drew his car well over to the right-hand side of the roadway, and passed the plaintiff without accident, going on to the agreed destination. Brady, who was following and who apparently did not discover the plaintiff's approach, for some reason drove his car to the left-hand side of the highway at this curve and came into collision with the plaintiff, who was driving his car partly upon the macadam and partly upon the gravel at the side of the macadam, demolishing plaintiff's car and doing the plaintiff and others bodily injury. The action was brought against both defendants on the theory that they were engaged in racing, and that they thus became joint tort feasors, and the jury has found a verdict in favor of the plaintiff against both defendants. There seems to be no good reason why the verdict should not stand as against the defendant Brady, but we are of the opinion that there is no substantial ground for the verdict against Welch, who did not come into collision with the plaintiff, and who does not appear to have been in any manner responsible for the way in which Brady operated his car. How wholly untenable is the plaintiff's theory, in so far as it relates to the defendant Welch, is shown by the so-called statement of facts of the respondent. After describing the conditions surrounding the parties at the start, and after tracing them up

the incline to the point of the accident, he says: " When the two cars got half way up to the point of the accident, the cars were making a terrific noise and were within two car lengths of each other and were *going about fifty miles per hour.* When Welch's car approached the curve, just beyond where the accident occurred, Welch saw the light of the Sanford car as it approached and he pulled over on to the right side of the road. This was the first opportunity that Brady had to pass and he immediately plunged into the opening and when he came face to face with the Sanford car, he pulled off of the road to the left and attempted to run around the Sanford car. * * * When the Welch car passed the Sanford car, it was going at least sixty miles per hour. * * * The Brady car was following the Sanford [Welch] car within two car lengths and going at least fifty miles per hour." That is we are asked to believe that Brady, who was going at the rate of fifty miles per hour, was attempting to pass Welch, who was traveling at least sixty miles per hour, and that Welch was in some manner to blame for the accident which befell the plaintiff. The evidence shows that the cars were running up grade, one of them with its cut-out open; that the highway was full of sharp and dangerous curves, making it practically impossible to maintain the rate of speed which is claimed, and if the Welch car was running at sixty miles per hour it is absurd to talk of Brady plunging into the opening made by Welch throwing his car to the outside of the roadway in an effort to pass. Brady is not pretended to have been *running over fifty miles per hour,* and the assumption of counsel that the distance of two car lengths, alleged to have prevailed when the cars were half way to the point of the accident had been maintained, is wholly without support in the evidence. There is, likewise, no evidence to support the proposition that this was the first opportunity that Brady had had for passing, or that Brady in fact made any effort to plunge into this opening. The simple fact is that two automobile parties started out in the evening for a lark, and one of them collided with the plaintiff and did him injury, without any act on the part of the other which in any degree contributed to the accident, any more than would have been the case if Welch had simply happened along and run his car up the incline ahead of Brady without knowing that Brady was following him. It may be that Welch was operating his car negligently, though it affirmatively appears that he saw the Sanford car light and made adequate provision for passing him safely, but this has nothing to do with the plaintiff; the latter was not injured by anything that Welch did. It is not established that the defendants were racing; there was no agreement to race, nor is there any evidence to show that Brady was attempting to pass Welch. So far as the evidence goes there was a mere bantering suggestion on the part of Welch that he could beat Brady to Karnick's place, and an apparent acquiescence on the part of Brady that Welch could do this, but there is not the slightest evidence that either of the defendants was engaged in a speed contest. The cars were high-powered cars; the plaintiff's counsel insists that they were capable of doing seventy miles per hour, but the greatest speed claimed is for Welch, who is alleged to have passed the Sanford car at at least sixty miles per hour, while Brady was dragging along at

fifty miles per hour in an alleged effort to plunge into an opening to pass the car going at sixty miles per hour, with a capacity of seventy. What might be the rule if the defendants were shown to have been racing in such a manner that each of them was involved in the accident is not here for determination. If they had been running abreast in such a manner that Brady could not avoid the collision without involving himself and Welch in an equally dangerous accident, and this had been in violation of some positive law or ordinance, as was the case in *Hanrahan* v. *Cochran* (12 App. Div. 91), the jury might have been warranted in holding the defendant Welch liable; but the evidence in this case does not show the defendant Welch to have made any improper use of the highway resulting in injury to the plaintiff. If he had hit the plaintiff's car it may be that the fact of his running in excess of thirty miles an hour might have been evidence of negligence, but it has no bearing where he has not produced an injury. The judgment and order appealed from should be reversed as against the defendant Welch and a new trial granted, with costs, and affirmed as to the defendant Brady, with costs.

Sewell, J., concurred.