Leonard Leigh Finz, J.
The issue raised by this motion made at the opening of a jury trial is whether the complaint sets forth a cause of action. It appearing that this is a case of first impression, an examination of the unique question addressed to this court is herein made.
*890 The facts as developed in the argument on the motion are as follows:
The plaintiff was walking on a sidewalk adjacent to the property owned by the defendant which was separated from the public way by a cyclone fence. The walk was covered with snow, a storm having abated several hours earlier. Suddenly there emerged a German Shepherd dog from behind a brick wall within the property where moments before it had been concealed, silent and unnoticed. Charging furiously the dog hurled itself at the fence, snarling and barking angrily at the plaintiff. Startled and terrified, the plaintiff moved back instinctively to avoid what she believed to be an imminent attack by a ferocious animal. Fortunately, the fence contained the growling dog thereby preventing physical contact with the frightened plaintiff. In her sudden and quick move, however, she fell and injured herself. She now brings suit against the defendant-owner of the dog and the City of New York.
There being no actionable negligence against the City of New York in the posture of this case, as a matter of law, this court must now proceed to the question of whether the cause of action asserted against the defendant dog owner can properly lie.
Addressed to this issue, the defendant contends that the action must fail as a matter of law in that:
(1) There was no physical contact between the dog and the person of the plaintiff and that fright alone which precipitates an injury is insufficient.
(2) The strict application of the doctrines of foreseeability and proximate cause remove any questions to be determined by a jury.
(3) The defendant-owner, having erected a cyclone fence around his property sufficient to restrain the subject dog, is not chargeable with negligent conduct under the circumstances of this case.
The court without passing upon the quality of proof which is a factual consideration for submission to the jury, rejects defendant’s contentions in reaching the conclusion that an actionable cause is stated in this case.
Experience and common sense dictate that a person, believing herself to be in imminent danger of attack by a feral animal, will take immediate and precipitous action to avoid injury. As such, if the footing, as in this case, is treacherous or *891 uncertain, it increases the probability that injury will result either from the attacking animal or from the frightened actions of its intended prey.
In Stamp v Eighty-Sixth St. Amusement Co. (95 Misc 599), the plaintiffs wife was a spectator at a vaudeville animal show held in the defendant’s theatre when several lions broke loose! In the resultant panic, the plaintiffs wife was injured, not by any of the lions, but by the crush of the crowd. The court stated (p 603): "It is also urged that since the plaintiffs wife was injured by the panic-stricken crowd and not by the lions directly, the injuries were not in a legal sense caused by the lions. The panic of the crowd was, however, directly caused by the natural fear of an unsecured vicious animal and was a result which might well have been foreseen by the defendant.”
This case should be placed in juxtaposition with Ford v Steindon (35 Mise 2d 339), wherein the description of a German Shepherd dog was as follows: "It has been said that with respect to such dogs, '[i]t is a matter of common knowledge that the court can almost take judicial knowledge of the fact that police dogs are, by nature, vicious, inheriting the wild and untamed characteristics of their wolf ancestors.’ (Carlisle v Cassasa, 234 App Div 112, 115.)”
A significant variant in this case is the fact that the plaintiff was not bitten. Nor was there any other physical contact between the dog and the plaintiff so as to cause the injuries sustained. The legal transition must therefore be made from a "dog bite” case to a "dog fright” case and, bearing in mind the requirement heretofore existing in the law that the defendant must have known of the vicious propensities of the animal, there must be a link between that condition and the circumstances involved in this case. In that connection, one must consider Lagoda v Dorr, (28 AD2d 208, 209-210) in which, as here, a German Shepherd dog was the subject of the action. "Respondents quite properly urge that an owner of a domestic animal is liable to one injured by the animal only if it is established that the owner has knowledge of its vicious propensities (Stevens v Hulse, 263 NY 421), but it is likewise true that the vicious propensities which go to establish liability include a propensity to do any act which might endanger another (Shufian v Garfola, 9 AD2d 910) and it has been held that these propensities may include jumping on people (Shain v Crausman, 3 NY2d 764). The doctrine that *892 every dog is entitled to 'one free bite’, if it ever prevailed in this State, is no longer followed (Kennet v Sossnitz, 260 App Div 759). The gravamen of the action is the knowledge of the owner that the dog was possessed of vicious or mischievous propensities (Lier v Bloomingdale Bros., 274 App Div 918). That the danger was foreseeable is clear from the dog’s conduct prior to the unfortunate event (Shain v Crausman, supra). ”
Shuffian v Garfola (supra) defined specifically the legal connotations of the term "vicious propensities”, comprehended though not stated in Lagoda (supra): "When used with reference to the liability of one who harbors a domestic animal of vicious propensities, the words 'vicious propensities’ include a propensity to do any act that might endanger the persons or property of others in a given situation (Dickson v McCoy, 39 NY 400, 403).” (Emphasis supplied.)
The objection by defendant’s counsel that there was, in fact, no contact between his dog and the plaintiff is not a weighty one since this matter has been encountered many times by the courts in other situations. Where the plaintiff was struck by an automobile after the same had been in a near collision with another vehicle, the court stated Hancock v Steber (208 App Div 455, 457): "Can it be held that he is not liable because his car did not actually touch the car driven by Mr. Hale? We think not. If the defendant, Steber, was negligent and his negligence placed Mr. Hale in a position of danger, and in attempting to escape Mr. Hale’s car was forced over the curb, resulting in injury to the plaintiff, the jury might find that the defendant Steber’s negligence was a proximate cause, without which the accident would not have happened. (Hanrahan v Cochran, 12 App Div 91; Burnham v Butler 31 NY 480; De Carvalho v Brunner, 223 id. 284; 38 Cyc. 488.)”
Similarly, in Mullen v Fayette (274 App Div 527), a young lad, who was on an errand for his mother, found the sidewalk obstructed by the defendant’s truck which had backed across it in order to make a delivery. In order to proceed, the boy entered the roadway to go around the front of the truck and was knocked down by a bicycle operated by another boy and sustained injuries. In an action against the owner of the truck, the court held (p 530-531): "On this record therefore we think the finding of the jury that the unlawful parking of this truck was the proximate cause of the accident is sustained by the evidence. (O’Neill v City of Port Jervis, 253 NY 423; Diener v *893 Carmen Cab Corporation, 264 NY 407; Peck v Independent Auto. Forwarding Corp., 280 NY 728; Foley v State of New York, 294 NY 275). * * * The fact that there was no contact between the infant and the truck does not absolve appellants from liability. (Hart v Ruduk, 233 App Div 453.)”
Perhaps the most significant of all the cases related to the "no physical contact” theory and the doctrines of proximate cause and foreseeability is Battalla v State of New York (26 AD2d 203, 204, affd 24 NY2d 980): "The State first contends that there was no proof of negligence. This case has previously been to the Court of Appeals (Battalla v State of New York, 10 NY2d 237, 242) where it was held that the claim stated a cause of action, and the majority opinion concluded 'Claimant should, therefore, be given an opportunity to prove that her injuries were proximately caused by defendant’s negligence.’ ” Adverting to the question of the lack of physical contact and the incidence of fright in causing personal injuries (p 205): "Further, it is common knowledge that fright can have serious mental and physical consequences. (See Battalla v State of New York, supra, p 241.) Accordingly, it appears that fright and detrimental consequences were or should have been anticipated by the State. In view of such foreseeability, the duty to take reasonable precautions, such as closing the safety bar, is properly inferred in regard to the infant passenger and such failure is the proximate cause of the resulting injuries, due to the negligence of the State.”
This question of fright causing physical injury, albeit without physical contact, has been considered in other jurisdictions. In 76 American Law Reports at page 683, it is stated: "Thus, where the defendant’s automobile, as a result of negligence, crashed through the front of the plaintiff’s store, and, although the automobile did not strike the plaintiff, upon hearing the crash of its entrance through the window and seeing its sudden appearance, she fainted and fell to the floor and as a result suffered pain in her hands and shoulders and suffered from fright and nervous shock, a recovery therefor was allowed. Block v Pascucci (1930) 111 Conn 58, 149 Atl 210.”
The analogy that focuses upon the crashing automobile in the Block case (supra) and the charging dog in this case is both logical and persuasive and deserving of acceptance. In 98 American Law Reports at page 403, the following appears: "Under § 436 of the American Law Institutes Restatement of the Law of Torts, under the heading, 'Physical harm resulting *894 from emotional disturbance,’ it is stated: '(1) If the actor’s conduct is negligent as violating a duty of care designed to protect another from a fright or other emotional disturbance which the actor should recognize as involving an unreasonable risk of bodily harm, the fact that the harm results solely through the internal operation of the fright or other emotional disturbance does not protect the actor from liability. (2) If the actor’s conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance; the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.’”
It is for a jury to determine whether the owner had the duty to do other than erect the fence knowing that it bordered upon a sidewalk used by the public and that his dog had the propensity to charge at and frighten passing pedestrians.
Similarly, the issues of proximate cause and forseeability are questions of fact. One cannot avoid liability solely by the creation of a cyclone fence. Danger and physical harm are not of necessity screened out by the presence of a barrier if that barrier is in some way surmountable or permits the threat of danger. The right to harbor animals must yield to the duty of containing them in a reasonable manner so as to avoid the harm that can befall an unsuspecting person, lack of physical contact notwithstanding. Owning and keeping a German Shepherd dog in an urban area requires the highest standards to be employed in the protection of the innocent public.
The exercise of reasonable care transcends the fence itself thereby requiring a jury’s examination of all of the circumstances leading up to the injury.
Whether an owner owes no further duty than to erect a fence under the circumstances of this case and without other reasonable safeguards or restraints is a question to be answered by community standards through a jury’s verdict.
Motion to dismiss complaint is denied.