Colorado Court of Appeals Opinions || April 7, 2016

Colorado Court of Appeals -- April 7, 2016
2016 COA 53. No. 14CA2494. Lopez v. Trujillo.

 
 
 
 COLORADO COURT OF APPEALS

 
 2016 COA 53

 
 

  

 Court of Appeals No. 14CA2494
 Adams County District Court No. 13CV32771
 Honorable Mark D. Warner, Judge

 Maria Lopez, individually and as mother and next friend to N.M,

 a minor child,

 Plaintiffs-Appellants,

 v.

 Alexander S. Trujillo,

 Defendant-Appellee.

  JUDGMENT AFFIRMED

 Division I
 Opinion by JUDGE MÁRQUEZ*
 Fox, J., concurs
 Vogt*, J., concurs in part and dissents in part

 Announced April 7, 2016

 Chalat Hatten Koupal & Banker, P.C., James H. Chalat, Russell R. Hatten, Denver, Colorado, for Plaintiffs-Appellants

 Zupkus & Angell, P.C., Erica O. Payne, Kristi A. Lush, Denver, Colorado, for Defendant-Appellee

 *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

  

 ¶1       This case calls on us to evaluate for the first time in Colorado the liability of a dog owner for injuries sustained by a person frightened by the owner’s dogs. Here, two pit bulls ran and jumped against a chain-link fence, barking and allegedly causing a passerby, who was separated from the dogs by the fence, to leave the sidewalk, enter the street, and be struck by a vehicle.

 ¶2       The injured passerby, plaintiff, N.M., and his parent and legal guardian, Maria Lopez, appeal from an order dismissing their complaint against defendant, Alexander S. Trujillo, for failure to state a claim for relief pursuant to C.R.C.P. 12(b)(5). We affirm.

 I. Background

 ¶3       In their first amended complaint, plaintiffs alleged that on the afternoon of August 5, 2013, N.M., who was then eight years old, and his cousin, J.L., walked on a sidewalk in Adams County, heading towards the playground of an elementary school across the street. As N.M. and J.L. approached defendant’s home, two "large, vicious, loud-barking pit bulls in the front yard of the house rushed at [the boys] (without being provoked)." The dogs jumped up on and rattled the four-foot-high chain-link fence that was parallel to, and right up against, the sidewalk. The complaint further alleged that the boys were frightened that the dogs were going to jump over the fence and bite them. So, they darted from the sidewalk out into the street. A service van struck N.M. when he ran into the street, causing serious injuries. J.L. was not injured. Plaintiffs also sued the driver and owner of the van, but plaintiffs settled with those parties.

 ¶4       In their first amended complaint, plaintiffs alleged defendant was negligent in maintaining his two vicious pit bulls, which he knew regularly threatened pedestrians on the sidewalk next to an elementary school. Plaintiffs also sued defendant in his capacity as a "landowner" under the Premises Liability Act (PLA), section 13-21115, C.R.S. 2015. Defendant moved to dismiss pursuant to C.R.C.P. 12(b)(5), and the district court granted the motion.

 ¶5       Plaintiffs raise two contentions on appeal: (1) the district court erred in concluding as a matter of law that defendant owed no duty to N.M. and (2) the district court erred in concluding that defendant was not subject to liability as a landowner under the PLA. We perceive no error.

 II. C.R.C.P. 12(b)(5) Standards

 ¶6       C.R.C.P. 12(b)(5) tests the legal sufficiency of a complaint to determine whether a plaintiff asserted a claim upon which relief can be granted. Hemmann Mgmt. Servs. v. Mediacell, Inc., 176 P.3d 856, 858 (Colo. App. 2007). In evaluating a motion to dismiss under C.R.C.P. 12(b)(5), the court must accept as true all averments of material fact and view the allegations of the complaint in the light most favorable to the plaintiff. Ashton Props., Ltd. v. Overton, 107 P.3d 1014, 1018 (Colo. App. 2004). Subject to exceptions not applicable here, the court must consider only matters stated in the complaint and must not go beyond the confines of the pleading. Fluid Tech., Inc. v. CVJ Axles, Inc., 964 P.2d 614, 616 (Colo. App. 1998). While motions to dismiss for failure to state a claim are viewed with disfavor, they may properly be granted where it appears beyond doubt that the plaintiff can prove no set of facts to sustain the claim. Hewitt v. Rice, 119 P.3d 541, 544 (Colo. App. 2004), aff’d, 154 P.3d 408 (Colo. 2007).

 ¶7       We review a dismissal for failure to state a claim under C.R.C.P. 12(b)(5) de novo and apply the same standards as the district court. Colo. Ethics Watch v. Senate Majority Fund, LLC, 2012 CO 12, ¶16, 269 P.3d 1248, 1253.

 III. Negligence Claim

 ¶8       Arguing that defendant had a duty to exercise reasonable care to control his vicious pit bulls so as not to frighten or threaten others, plaintiffs contend the district court erred in concluding as a matter of law that defendant owed no duty to N.M. under his negligence claim. We disagree.

 A. Applicable Law

 ¶9       To prove a prima facie negligence claim, the plaintiff must prove: (1) the defendant owed a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant’s breach caused that injury. Vigil v. Franklin, 103 P.3d 322, 325 (Colo. 2004). Of these elements, duty is the threshold element. Id.

 ¶10       Whether a defendant owes a duty to a plaintiff is a question of law to be determined by the court. Id. "The court determines, as a matter of law, the existence and scope of the duty — that is, whether the plaintiff’s interest that has been infringed by the conduct of the defendant is entitled to legal protection." Metro. Gas Repair Serv., Inc. v. Kulik, 621 P.2d 313, 317 (Colo. 1980).

 ¶11       In determining whether the law imposes a duty on a particular defendant, the court should consider many factors, including the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant’s conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the defendant. Taco Bell, Inc. v. Lannon, 744 P.2d 43, 46 (Colo. 1987). No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards — whether reasonable persons would recognize a duty and agree that it exists. Id.

 ¶12       "The scope of the property does not define the scope of the duty[.]" Westin Operator, LLC v. Groh, 2015 CO 25, ¶40, 347 P.3d 606, 616. The risk of harm does. Id. "As the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less to generate a duty of precaution." Id. at ¶35, 347 P.3d at 614 (alteration and citation omitted).

 ¶13       Other divisions of this court have held that a dog owner has a duty to prevent harm and take reasonable precautions against harm caused by the owner’s dog. See Snow v. Birt, 968 P.2d 177, 179 (Colo. App. 1998) (concluding that the defendants owed a common law duty of care to protect guests in their home from a dog); Vigil in Interest of Vigil v. Payne, 725 P.2d 1155, 1157 (Colo. App. 1986) (adopting the rule that where a landlord has actual knowledge that a tenant owns an animal whose vicious actions have created a clear potential for injury, the landlord has a duty to take reasonable precautions to protect third persons from the animal). However, both of these cases involved parties who were on the defendants’ property and were directly injured by their dogs.

 ¶14       No Colorado appellate court has dealt specifically with whether a dog owner owes a duty to exercise reasonable care to an injured party when the injured party was not directly injured by the dogs or on the dog owner’s property, and the dogs remained confined and never left the landowner’s property.

 B. Analysis

 ¶15       Plaintiffs contend defendant owed N.M. a duty of care. We disagree and conclude that the Taco Bell factors do not support a determination that defendant owed a duty to N.M. We address each factor in turn.

 ¶16       First, as to the risk involved, the dogs were fenced inside defendant’s yard by a four-foot-high chain-link fence. While the dogs may have jumped up on and rattled the fence, the complaint does not allege that either dog jumped over the fence or physically harmed or touched N.M. or J.L.

 ¶17       Second, the allegations of the complaint do not support a determination of foreseeability and the likelihood of injury. "[F]oreseeability is based on common sense perceptions of the risks created by various conditions and circumstances." Taco Bell, 744 P.2d at 48. Here, N.M., scared by the pit bulls, "darted from the sidewalk out into [the street]" and was struck by a service van. While the injuries were tragic, their likelihood was not foreseeable.

 ¶18       Plaintiffs urge us to adopt the holding in Machacado v. City of New York, 365 N.Y.S.2d 974 (N.Y. Sup. Ct. 1975). In Machacado, the court concluded that an actionable cause was stated when the plaintiff was frightened and fell and injured herself on a snow-covered sidewalk after a German Shepherd, snarling and barking at the plaintiff, emerged from behind a brick wall on the defendant’s property and hurled itself at the snow-covered cyclone fence separating the sidewalk from the property. Id. at 975-80. The dog did not physically contact the plaintiff.

 ¶19       We conclude that Machacado is distinguishable. In Machacado, the plaintiff, startled by the dog, moved back, fell, and injured herself. Id. at 976. The court found that the "treacherous or uncertain" footing caused by the presence of snow on the ground "increase[d] the probability that injury will result . . . from the frightened actions" of a person intending to avoid the dog. Id.

 Here, however, N.M. did not step back from the barking dogs but ran off the sidewalk and into the street. We conclude it was not foreseeable to defendant that a passerby, startled by the dogs that were confined, would run out into the street into the path of moving vehicles.

 ¶20       Our conclusion is supported by the reasoning of the California Court of Appeals. In Nava v. McMillan, 176 Cal. Rptr. 473 (Cal. Ct. App. 1981), that court held that a pedestrian struck by an automobile after running into the street to avoid barking, fenced-in dogs did not face a foreseeable risk of harm. The court noted that "even if the dogs had been barking or jumping against the fence which separated them from the sidewalk, such activities are quite common for a dog." Id. at 476.

 ¶21       Third, we weigh the foreseeability and likelihood of injury against the social utility of a defendant’s conduct. "It is an integral part of our whole system of private property that an owner or occupier of land has a privilege to use the land according to his own desires." Nava, 176 Cal. Rptr. at 476. "Keeping a pet dog is undoubtedly one of the most cherished forms in which the constitutionally protected right to own personal property is exercised. To most people it is more than ownership of mere personal property." Id. at 476-77. We conclude that the social utility of defendant’s conduct outweighs the foreseeability and likelihood of injury.

 ¶22       Fourth, the magnitude of the burden on dog owners of guarding against injury is high, as are the costs of placing any additional burdens on dog owners. The consequences upon the community of imposing a burden as suggested by plaintiff would be unreasonable: the owner of a dog would in effect be required to keep a dog in a place where it could neither be seen nor heard by members of the public passing by. Additional measures, such as erecting a higher or sturdier fence, place a significant financial burden on dog owners and do not alleviate the possibility that a passerby would be frightened by a suddenly barking dog.

 ¶23       Nor do the authorities cited by the dissent lead to a different conclusion. To support its disagreement with the Taco Bell risk factors, the dissent begins with a citation to CJI-Civ. 4th 13:1 (2013). Because the determination of whether a party owes a duty is a question of law to be determined by the court, presumably this instruction would not be given until that determination has been made. Thus, the instruction itself does not direct a court to determine whether a duty exists. Additionally, pattern jury instructions are not law. Krueger v. Ary, 205 P.3d 1150, 1154 (Colo. 2009).

 ¶24       The one Colorado case the dissent cites where the plaintiff had no direct contact with the dog, Fishman v. Kotts, 179 P.3d 232 (Colo. App. 2007), is distinguishable. In Fishman, the plaintiff and her companions were riding horses along a residential road when two unconfined dogs began barking at the horses and their riders. Id. at 234. One dog ran into the road, got under the plaintiff’s horse, and began nipping and biting at the horse’s hooves. Id. The plaintiff leaned over her horse, urging the dog to "go home," when her horse reared up and fell on top of her, causing her severe injuries. Id. The plaintiff appealed a judgment entered on a jury verdict in favor of the defendants, the dog owners. Id. A division of this court affirmed, holding, among other things, that the trial court did not err in giving the jury the instructions outlined in CJI-Civ. 4th 13:1 (2006). Id. at 236. However, there was no discussion of the determination of duty as a matter of law or the Taco Bell factors in Fishman.

 ¶25       Citing to the collection of cases provided in 30 A.L.R.4th 986 Liability of Dog Owners for Injuries Sustained by Person Frightened by Dog (Westlaw database updated Mar. 2016), the dissent does not point to which cases in the article support the dissent’s position. The dissent cites a number of cases, but with the exception of Machacado, distinguished above, every case involves circumstances that differ greatly from those in the case before us.

 ¶26       To support its analysis of foreseeability and likelihood of injury, the dissent begins with Brandeis v. Felcher, 211 So. 2d 606 (Fla. Dist. Ct. App. 1968). In resolving an appeal of a summary judgment for the defendants, the court addressed section 767.01 of the Florida statutes, which provided: "Owners responsible.-Owners of dogs shall be liable for any damage done by their dogs to sheep or other domestic animals or livestock, or to persons." Id. at 607. The court stated that "[i]t has been said that liability imposed by this section is an absolute liability as an insurer and is not contingent upon a showing of the negligence of the owner, or scienter." Id. The court further explained that liability depended on whether "the dogs [were] the [c]ause of the damage complained of by the plaintiffs" and added that causation is generally a question of fact. Id. The court noted that the plaintiffs proceeded upon a theory of absolute liability under the Florida statute, id. at 609, and concluded that, under that statute, a jury should be permitted to determine whether, under the specific facts of the case, the damage to the decedent was "done by" the dogs, id. Here, plaintiffs cite no similar statute, and they proceeded under a theory of negligence, not absolute or strict liability.

 ¶27       Marchand v. York, 624 So. 2d 440 (La. Ct. App. 1993), is also distinguishable. There, the owner was in the garage with his guests and two Labrador dogs. Id. at 441. The dogs were not on a leash or in any way confined. Id. The plaintiff, a twelve-year-old girl, went up the driveway toward the open garage, and the dogs barked. Id. After witnesses gave differing accounts as to whether the dogs chased the plaintiff, the jury found in favor of the owner. Id. at 443. Here, the case involved confined dogs, and the court in Marchand did not discuss determination of duty as a matter of law.

 ¶28       Likewise, in Moore v. Myers, 868 A.2d 954, 960-61 (Md. Ct. Spec. App. 2005), the son of a pit bull owner had the pit bull with him and threatened the plaintiff and her friends that he would "sic his dog on" them. Id. The plaintiff was injured while fleeing from the pit bull that was chasing her. Id. Unlike in the case before us, the dog was unleashed and not confined. Id. Also, the appellate court, in reversing the trial court’s decision in favor of the dog owner, relied on a county law that required an owner of a pit bull terrier to confine the dog within a building or secure kennel or be "secured by an unbreakable or unseverable leash and maintained under the control of an adult." Id. at 364. In this case, the dogs were confined behind a fence, and no comparable law is cited.

 ¶29       Finally, in Neulist v. Victor, 209 N.E.2d 494, 495-96 (Ohio Ct. App. 1965), the plaintiff was riding her bike on a public sidewalk when two fighting dogs ran into the plaintiff’s path. Id. According to her petition, the eight-year-old plaintiff, "to avoid hitting or running into said fighting dogs and to get out of the reach of the said dogs . . . alight[ed] from her bicycle and onto the street," where she was struck by a vehicle. Id. Unlike in this case, where the dogs were confined behind a fence, the dogs in Neulist were not confined. Id. Therefore, Neulist is distinguishable.

 ¶30       The dissent also relies on certain statutes and ordinances as support for the proposition that the social utility of defendant’s conduct does not outweigh the foreseeability of the risk. Plaintiffs do not rely on either section 18-9-204.5(1)(a), C.R.S. 2015, or the Denver pit bull ordinance. Plaintiffs, as residents of Adams County, rely on the Adams County ordinance cited by the dissent only to the extent that they argue that defendant failed to license his dogs as required by section 5-2 of article V of Adams County Ordinance Number 6. Section 5-7, upon which the dissent relies, prohibits "vicious and dangerous pet animals" "unless that pet animal is confined inside . . . property surrounded by a fence." Adams County Ordinance No. 6, Art. V, § 5-7 (emphasis added). As previously stated, the dogs in this case were appropriately confined by a fence.

 ¶31       Therefore, the trial court did not err in concluding that defendant did not owe N.M. a duty of care as plaintiffs alleged.

 IV. Liability Under PLA

 ¶32       Next, we also disagree with plaintiffs’ contention that the district court erred in concluding that defendant was not a "landowner" for purposes of the PLA.

 A. Standard of Review

 ¶33       Whether a party is a landowner within the meaning of the PLA is a mixed question of fact and law. Jordan v. Panorama Orthopedics & Spine Ctr., PC, 2013 COA 87, ¶10, 350 P.3d 863, 867 (Jordan I), aff’d, 2015 CO 24, 346 P.3d 1035 (Jordan II). We review a court’s findings of historical fact for clear error and decide only whether there is any evidence in the record to support those findings. Id. at ¶13, 350 P.3d at 867. We review de novo the ultimate legal conclusion that a party is a landowner. Id.

 B. Applicable Law

 ¶34       An injured person may bring a claim under the PLA only against a "landowner." See § 13-21-115(2). A person need not hold title to property to be considered a "landowner." See Pierson v. Black Canyon Aggregates, Inc., 48 P.3d 1215, 1219 (Colo. 2002). A "landowner" includes "an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." § 13-21-115(1). The PLA "provides the exclusive remedy against a landowner for injuries sustained on the landowner’s property." Corder v. Folds, 2012 COA 174, ¶9, 292 P.3d 1177, 1178.

 ¶35       A party may be regarded as a landowner if it is "legally conducting activity or creating a condition on the property and therefore responsible for that activity or condition." Jordan I, ¶18, 350 P.3d at 868 (quoting Pierson, 48 P.3d at 1220). The focus in this context is "whether the defendant is someone who is legally entitled to be on the real property and whether that defendant is responsible for creating a condition on real property or conducting an activity on real property that injures an entrant." Pierson, 48 P.3d at 1221. This emphasis places "prospective liability with the person or entity that created the condition or conducted the activity on the real property that, in turn, caused injury to someone." Id. "[T]he cause of action must arise out of an injury occurring on the real property of another and by reason of the condition of the property or activities or circumstances directly related to the real property itself . . . ." Id.

 ¶36       In their complaint, plaintiffs admitted that the sidewalk was not defendant’s property. Nevertheless, they contend that Jordan II, in which the supreme court concluded that the defendant was not a landowner of a sidewalk within the meaning of the PLA, is inapplicable because it only applies in a commercial leasing context. They contend that Jordan II stands only for the proposition that a tenant under a lease which allocates responsibilities for common areas to the landlord is not conducting an activity when patients use a sidewalk to access a commercial business. We do not read that opinion so narrowly. In Jordan II, the plaintiff tripped and fell on a common-area sidewalk leading to the building in which the defendant leased office space. ¶2, 346 P.3d at 1037. While the supreme court granted certiorari to determine whether the PLA applies to a commercial tenant defendant in a lawsuit seeking damages for injuries the plaintiff sustained in a common area, Jordan II nevertheless informs our application of the PLA. The supreme court held that the defendant was not a landowner within the meaning of the PLA and that the defendant "was not legally responsible for the condition of the sidewalk or for the activities conducted or circumstances existing there." Id. at ¶37, 346 P.3d at 1044; see also Jordan I, ¶2, 350 P.3d at 866 (concluding that the defendant was not a landowner because there was no evidence that the defendant was in possession of the sidewalk or was responsible for creating a condition or conducting an activity on the sidewalk that caused the plaintiff’s injuries).

 ¶37       Divisions of this court have also held that public sidewalks adjacent to a landowner’s property are not property of the landowner pursuant to the PLA. See Burbach v. Canwest Invs., LLC, 224 P.3d 437, 441-42 (Colo. App. 2009); Land-Wells v. Rain Way Sprinkler & Landscape, LLC, 187 P.3d 1152, 1154 (Colo. App. 2008). Accordingly, defendant is not a landowner as a "person in possession of real property" for PLA purposes. § 13-21-115(1).

 ¶38       Next, we must determine whether defendant was "legally conducting activity or creating a condition on the property and therefore responsible for that activity or condition." Jordan I, ¶18, 350 P.3d at 868 (quoting Pierson, 48 P.3d at 1220). Plaintiffs contend that defendant, like the defendant in Sill v. Lewis, 140 Colo. 436, 437, 344 P.2d 972, 972 (1959), affirmatively acted when he unleashed "two large vicious[] pit bulls upon unsuspecting passerbys [sic]" and created a sufficiently dangerous condition to impose PLA liability. See Woods v. Delgar Ltd., 226 P.3d 1178, 1182 (Colo. App. 2009) (citing Bittle v. Brunetti, 750 P.2d 49, 51 n.2 (Colo. 1988)). We are not persuaded.

 ¶39       In Sill, the defendant discharged water onto a sidewalk abutting his property. 140 Colo. at 437, 344 P.2d at 972. The plaintiff’s injuries occurred when the water froze, creating "the icy condition of the sidewalk" which caused plaintiff to fall. Id. However, defendant in the case before us did not "unleash" his dogs onto the sidewalk or in any way affect the public sidewalk in a manner similar to the defendant in Sill. In fact, his dogs remained confined to his property inside the fence. Sill is therefore inapposite.

 ¶40       Accordingly, we conclude that defendant was not a landowner within the meaning of the PLA and affirm the dismissal of the PLA claim in plaintiffs’ complaint.

 V. Conclusion

 ¶41       The judgment is affirmed.

 JUDGE FOX concurs.

 JUDGE VOGT concurs in part and dissents in part.

 JUDGE VOGT, concurring in part and dissenting in part.

 ¶42       I agree with the majority’s resolution of the Premises Liability Act issue. However, I do not agree that, under the particular circumstances of this case, plaintiffs would have been unable to prove any set of facts to sustain their negligence claim. See Hewitt v. Rice, 119 P.3d 541, 544 (Colo. App. 2004), aff’d, 154 P.3d 408 (Colo. 2007). I therefore respectfully dissent from the portion of the majority opinion that affirms the trial court’s dismissal of that claim pursuant to C.R.C.P. 12(b)(5).

 ¶43       Like the trial court, the majority concludes that, as a matter of law, defendant owed no duty to plaintiff N.M. As the majority correctly states, the controlling test for determining whether such a duty exists is that set forth in Taco Bell v. Lannon, Inc., 744 P.2d 43, 46 (Colo. 1987). Upon applying the Taco Bell factors to the facts alleged in plaintiffs’ complaint, I reach a different conclusion.

 ¶44       The first factor to consider is the risk involved. Unlike the majority, I do not view it as dispositive of the risk issue that the dogs neither jumped over the four-foot-high chain-link fence nor physically harmed or touched the boys. In Colorado, a dog owner may be liable for harm caused by the dog to another person even if the dog does not physically contact the other person. CJI-Civ. 4th 13.1 (2013), titled Domestic Animals — Dangerous or Vicious Tendencies — Elements of Liability, permits a jury to assess liability against a defendant who (1) kept a kind or breed of animal that had vicious or dangerous tendencies; (2) knew or had notice that the animal had vicious or dangerous tendencies; (3) was negligent in not using reasonable care to prevent injuries or damages that could have reasonably been anticipated to be caused by the dangerous or destructive tendencies of the animal; and (4) was responsible, by his or her negligence, for injuries, damages, or losses to the plaintiff. The notes on use state that a different instruction should be used "[i]n dog bite cases" involving death or serious bodily injury, and they cite as authority a Colorado case, Fishman v. Kotts, 179 P.3d 232 (Colo. App. 2007), in which the plaintiff had not had any direct contact with the dog but, rather, was injured when the dog frightened the horse she was riding, causing the horse to rear up and fall on her.

 ¶45       In this respect, the rule in Colorado accords with case law from other jurisdictions. See 30 A.L.R.4th 986 Liability of Dog Owners for Injuries Sustained by Person Frightened by Dog (Westlaw database updated Mar. 2016) (collecting and analyzing cases in which courts have considered whether, and under what circumstances, the owner of a dog is liable for injuries to another person who is frightened, but not bitten or otherwise physically attacked, by the dog).

 ¶46       The second factor is the foreseeability and likelihood of injury. The majority concludes that "it was not foreseeable to defendant that a passerby, startled by the dogs, would run out into the street into the path of moving vehicles." In my view, it was eminently foreseeable that a child on his way to the elementary school across the street would be frightened when two "large, vicious, loud-barking pit bulls" rushed up to and jumped up on the chain-link fence next to the sidewalk, and that the child would run into the street to get away from them. Similar fact patterns have been described in cases from other jurisdictions. See Brandeis v. Felcher, 211 So. 2d 606, 606-09 (Fla. Dist. Ct. App. 1968) (children walking on sidewalk abutted by four-foot chain-link fence became frightened when two German Shepherds barked, ran at fence, and one dog put paws and head over fence; one child darted into street and was killed when struck by an oncoming car); Marchand v. York, 624 So. 2d 440 (La. Ct. App. 1993) (twelve-year-old girl, frightened by dogs who barked at her, ran into street where she was hit by car); Moore v. Myers, 868 A.2d 954, 969 (Md. Ct. Spec. App. 2005) ("Monica’s flight from a barking and advancing pit bull was foreseeable. That she fled into the street and into the path of an on-coming car was a foreseeable consequence of her fright. That Jaton may not have foreseen the specific nature of the harm that befell Monica is inconsequential."); Neulist v. Victor, 209 N.E.2d 494 (Ohio Ct. App. 1965) (two dogs frightened eight-year-old girl riding her bicycle on public sidewalk, causing her to run into the path of an automobile which struck and injured her). Although these cases may involve different theories of liability and are otherwise distinguishable, the fact that they all involve situations where children frightened by dogs have run into the street and been hit by cars supports a conclusion that such injury is in fact foreseeable.

 ¶47       As for the third Taco Bell factor, the majority cites the constitutionally protected right to own personal property — specifically, to keep a pet dog — in concluding that the social utility of defendant’s conduct outweighs the foreseeability of injury. Again, I disagree.

 ¶48       The complaint alleges that the dogs at issue here were "vicious." For purposes of ruling on a motion to dismiss, that allegation must be accepted as true. In Colorado, it has already been determined that the privilege to use private property as one wishes is subject to limitations when such use amounts to ownership of a vicious or dangerous pet animal. See § 18-9204.5(1)(a), C.R.S. 2015 ("[t]he general assembly hereby finds, determines, and declares that . . . [d]angerous dogs are a serious and widespread threat to the safety and welfare of citizens throughout the state because of the number and serious nature of attacks by such dogs"; statute provides for criminal penalties against owners of dangerous dogs that injure other people); Adams County Ordinance No. 6, Art. V, § 5-7 ("Vicious and dangerous pet animals prohibited unless confined."); see also Colo. Dog Fanciers, Inc. v. City & Cty. of Denver, 820 P.2d 644, 651 (Colo. 1991) ("Because the ownership of a dog does not implicate fundamental rights such as speech or association, the [Denver pit bull] ordinance should be upheld unless the dog owners are able to establish that the ordinance is unconstitutional on its face and incapable of any valid application.").

 ¶49       Again, courts from other jurisdictions have similarly recognized that the right to own a dangerous or vicious animal is subject to limitations. See Farrior v. Payton, 562 P.2d 779, 787 (Haw. 1977) ("The right to harbor animals must yield to the duty of containing them in a reasonable manner so as to avoid the harm that can befall an unsuspecting person, lack of physical contact notwithstanding."), quoting Machacado v. City of New York, 365 N.Y.S.2d 974 , 979 (N.Y. Sup. Ct. 1975)).

 ¶50       Given the general recognition of the limitations on the right to keep vicious dogs, I cannot conclude that the social utility of defendant’s ownership of the dogs in this case outweighs the foreseeability of injury to others by those dogs.

 ¶51       As for the final Taco Bell factor, the majority concludes that the magnitude of the burden of guarding against injury or harm is "high," and the consequences of placing additional burdens on dog owners would be "unreasonable," because dog owners "would in effect be required to keep a dog in a place where it could neither be seen nor heard by members of the public passing by." I disagree with that conclusion because it appears to rest on assumptions for which, at this stage in the proceedings, there is no factual support. It may be that this dog owner, who kept the pit bulls in a yard separated from passing school children only by a four-foot-high chain-link fence directly abutting the sidewalk, could have better guarded against the harm that occurred by confining the animals to a different part of the yard on school days, or moving the fence further from the sidewalk, or erecting a higher fence. Such measures would not necessarily amount to placing a "significant financial burden" on this dog owner, let alone on dog owners generally.

 ¶52       More important, whether the dog owner in this case had a duty to do more than he did is a question for the jury. See Machacado, 365 N.Y.S.2d at 980 ("Whether an owner owes no further duty than to erect a fence under the circumstances of this case and without other reasonable safeguards or restraints is a question to be answered by community standards through a jury’s verdict."). It would likewise be for the jury to determine whether issues of contributory negligence or causation would reduce or preclude any recovery by plaintiffs in this case.

 ¶53       The jury will not have that opportunity because the trial court held, and the majority agrees, that as a matter of law defendant owed no duty to N.M. For the reasons set forth above, I disagree with that conclusion. I would let the negligence claim go to the jury.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Court of Appeals Opinions || April 7, 2016

Back