IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CYNTHIA E. MCGRELLIS, | § | |
| | § | |
| Plaintiff Below, | § | No. 147, 2019 |
| Appellant, | § | |
| | § | |
| v. | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| JAMES BROMWELL and | § | |
| JENNIFER BROMWELL, | § | C.A. No. N17C-01-401 |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: November 8, 2019
Decided: January 31, 2020

Before **SEITZ,** Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## ORDER

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The plaintiff below-appellant, Cynthia E. McGrellis, filed this appeal from a Superior Court decision granting the renewed motion for a directed verdict filed by the defendants below-appellees, James Bromwell and Jennifer Bromwell.[1] After careful consideration of the parties' arguments on appeal, we affirm the judgment of the Superior Court.

---

[1] *McGrellis v. Bromwell*, 2019 WL 1422901 (Del. Super. Ct. Mar. 29, 2019).

(2)    The trial record reflects that, on December 31, 2016, McGrellis was walking her leashed, 100-pound bulldog in the middle of the street outside of the Bromwells' house. As she walked by, she noticed a white dog and a black dog barking in the front of the house. The black dog exited the house through the front door and ran toward McGrellis. McGrellis recalled seeing black fur and landing on the street. She did not see the black dog around her on the street, and was unsure if the black dog ever made contact with her or left the Bromwells' property.

(3)    The Bromwell family regularly fostered rescue dogs, including the black dog. James Bromwell described the black dog as docile and sweet, a Border Collie/Lab mix, and weighing about 30 pounds. On December 31st, he heard barking and looked outside his front door to see what was going on when the black dog pushed her way outside. According to James Bromwell, he picked the dog up before she made it made it past the area of the front steps. He also testified that the dog never left the property or came into contact with McGrellis or her dog.

(4)    After putting the dog back in his house, James Bromwell approached McGrellis, helped her up, and walked her back to her house. McGrellis later went to urgent care where she was diagnosed with a serious shoulder injury that required surgery and physical therapy. According to Bromwell and certain medical records, McGrellis initially indicated that she fell because her dog pulled her down.

(5)    At the conclusion of McGrellis's case, the Bromwells moved for

judgment as a matter of law. They argued that McGrellis had not shown they had a duty to prevent the dog from exiting their house or running around their property and barking. The Superior Court denied the motion without prejudice. After the second time the jury indicated they could not reach agreement on the first question in the verdict form—whether the Bromwells were negligent in a manner that caused McGrellis's injuries—the Superior Court declared a mistrial.

(6) The Bromwells filed a renewed motion for direct verdict. They argued that there was no duty to keep a dog confined inside a property where it cannot be seen or heard by passerby. They also argued that McGrellis failed to prove their dog caused her injuries. McGrellis opposed the motion. On March 29, 2019, the Superior Court granted the motion, holding that the Bromwells did not owe a duty to a passerby to keep their dogs unseen and unheard on their property. This appeal followed.

(7) McGrellis's arguments on appeal may be summarized as follows: (i) the attorneys who represented her before she represented herself at trial were unsatisfactory; (ii) the Superior Court failed to poll the jury; (iii) the Superior Court should have given a jury instruction for unintentional infliction of emotional distress; (iv) her case met the criteria for strict liability; (v) the Superior Court erred in granting the renewed motion for judgment as a matter of law; and (vi) she suffered serious and permanent injuries.

3

(8) To the extent McGrellis asserts malpractice claims against her former attorneys, those claims are not cognizable in this appeal. McGrellis next complains that the jury was not polled. McGrellis did not raise this claim below so we review for plain error.[2] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[3]

(9) The jury twice informed the court it could not reach unanimous agreement. When the jury was summoned to the courtroom for the last time, the jury foreman affirmed that he believed no further progress could be made toward overcoming the impasse or reaching a verdict. Under Superior Court Civil Rule 31(d), a jury poll is only required at the request of the party or upon the court's own motion. Neither party made such a request here. McGrellis has not shown that the Superior Court was required to poll the jury or that her substantial rights were prejudiced by the lack of jury polling. Accordingly, there is no plain error.

(10) McGrellis next contends that the Superior Court should have given a jury instruction for unintentional infliction of emotional distress. McGrellis did not request such an instruction in the proceedings below so we review for plain error.[4] In her complaint, McGrellis asserted claims for negligence and strict liability. She

---

[2] Supr. Ct. R. 8; *Beebe Med. Ctr. v. Bailey*, 913 A.2d 543, 556 (Del. 2006).
[3] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).
[4] *See supra* n.2.

4

did not, and never did, assert a claim for infliction of emotional distress. McGrellis has not shown that the lack of a jury instruction for a claim she never asserted clearly prejudiced her substantial rights or jeopardized the fairness and integrity of the trial process. The lack of a *sua sponte* jury instruction for unintentional infliction of emotional distress does not constitute plain error here.

(11) McGrellis also argues that her case satisfied the standard for strict liability. In her complaint, McGrellis asserted a strict liability claim under 16 *Del. C.* § 3053F.[5] McGrellis expressly waived her strict liability claim when the parties discussed the jury instructions with the judge at a pretrial conference. She cannot change her mind and revive that claim now.

(12) McGrellis next challenges the Superior Court's granting of the renewed motion for a directed verdict. We review a trial court's decision on a motion for directed verdict to determine "whether the evidence and all reasonable inferences that can be drawn therefrom, taken in a light most favorable to the nonmoving party, raise an issue of material fact for consideration by the jury."[6] A defendant is entitled to judgment as a matter of law when the plaintiff fails to establish a prima facie case of negligence.[7] The elements of a negligence claim are: (i) the defendant owed the

---

[5] Under this statute, a dog owner is liable for any injury to a person that is caused by their dog, unless the injured person was attempting to commit a crime on the property of the dog owner, was committing a crime against a person, or was abusing the dog.
[6] *Fritz v. Yeager*, 790 A.2d 469, 471 (Del. 2002).
[7] *Pipher v. Parsell*, 930 A.2d 890, 892 (Del. 2007).

5

plaintiff a duty of care; (ii) the defendant breached that duty; and (iii) the defendant's breach was the cause of the plaintiff's injury.[8]

(13)  The Superior Court did not err in concluding that the Bromwells did not owe a duty of care to McGrellis.  To determine whether one party owed a duty of care, Delaware courts will generally consult the Restatement (Second) of Torts.[9] As the Superior Court noted, McGrellis did not identify anything in the Restatement to support her position that the Bromwells were required to keep their dogs from escaping the house and running into their yard.  Section 290 of the Restatement requires a person to know the qualities and habits of humans and animals.[10]  Section 302 of the Restatement states that a "negligent act or omission may be one which involves an unreasonable risk of harm to another through…the foreseeable action of…an animal."[11]  This Court has held that "[o]ne's duty encompasses protecting against *reasonably foreseeable* events."[12]

(14)  The Superior Court correctly found that the Bromwells could not reasonably foresee that one of their dogs leaving the house and running onto their property might cause a passerby to be startled and fall onto the street.  There was no evidence presented at trial to suggest that the Bromwells' dog had previously

---

[8] *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001).
[9] *Riedel v. ICI Americas, Inc.*, 968 A.2d 17, 20 (Del. 2009), *overruled on other grounds by Ramsey v. Georgia S. Univ. Advancement Ctr.*, 189 A.3d 1255 (Del. 2018).
[10] Restatement (Second) of Torts § 290(a).
[11] Restatement (Second) of Torts § 302(b).
[12] *Delmarva Power & Light Co. v. Burrows*, 435 A.2d 716, 718 (Del. 1981) (emphasis added).

escaped the house or charged a passerby. There was no evidence presented at trial that the dog was a dangerous breed or vicious. The absence of such evidence distinguishes this case from the "dog fright" negligence cases in other jurisdictions that McGrellis relies upon to argue that the Bromwells owed a duty to keep their dogs from alarming a passerby.[13]

(15) In opposing the renewed motion for a directed verdict, McGrellis raised § 4.02.001C of the New Castle County Code for the first time. This section requires that dogs be kept under restraint at all times.[14] Under the Code, "[r]estraint means any dog secured by a leash or lead not exceeding twenty (20) feet in length, within the real property limits of its owner(s), or within a vehicle being driven or parked on the streets."[15] Even if McGrellis had raised this code section in a timely manner, the evidence presented at trial reflects that the Bromwells' dog was within the real property limits of its owners at the time of the incident and was therefore under restraint as defined in § 4.02.001A of the Code.

---

[13] *See, e.g., Farrior v. Payton*, 562 P.2d 779, 785 (Haw. 1977) (reversing entry of directed verdict for defendants on negligence claim arising from plaintiffs falling off a rock wall while avoiding what they believed to be an imminent attack by a German Shepherd because the defendants knew of the dog's propensity to charge passerby); *Machado v. City of New York*, 365 N.Y.S.2d 974, 979 (N.Y. App. Div. 1975) (denying motion to dismiss negligence claim arising from plaintiff slipping and falling after she was startled by German Shepherd charging fence where the defendant knew the dog had a propensity to charge at and frighten strangers). McGrellis also cites "dog fright" strict liability cases, but as previously discussed she waived her strict liability claim before trial. *See, e.g., Morris v. Weatherly*, 488 N.W.2d 508, 510 (Minn. Ct. App. 1992) (affirming the trial court findings that dog owners were strictly liable under Minnesota statute for injuries suffered by a cyclist and mail carrier who were startled, but not touched, by dogs).
[14] New Castle Cty. C. § 4.02.001(C)(1).
[15] New Castle Cty. C. § 4.02.001A.

(16) McGrellis also failed to identify a special relationship between herself and the Bromwells that would impose a heightened duty upon the Bromwells. On appeal, McGrellis seems to suggest that the Bromwells had special duties as a result of their regular fostering of dogs. But she did not raise this argument below and she identifies no authority that people who foster dogs owe special duties to people who pass by their homes.

(17) Finally, McGrellis raises the injuries she suffered. As discussed above, the Superior Court did not err in determining that the Bromwells did not owe a duty to McGrellis. Having carefully considered the parties' positions, we conclude that the Superior Court did not err in granting the Bromwells' renewed motion for judgment as a matter of law.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice