[Civ. No. 23264. Second Dist., Div. Three. Feb. 11, 1959.]

BERNICE CHANDLER et al., Respondents, v. DAVID VACCARO, JR. et al., Appellants.

*Assigned by Chairman of Judicial Council.

Jarrett & Morgan for Appellants.

Perry & Bush for Respondents.

SHINN, P. J.—Action against David V. Vaccaro, James M. Vaccaro and Thomas R. Vaccaro to recover damages for personal injuries resulting from dog bite. Trial was to a jury. Although plaintiffs were nonsuited on their causes of action under the dog bite statute (Civ. Code, § 3342), the jury awarded $7,500 damages to Mrs. Chandler and $750 damages to Mrs. Reynolds on their causes of action alleging liability at common law, based upon the responsibility of one who harbors a known vicious dog for injuries suffered by one who is on the premises as an invitee. Judgment was entered on the verdict and the Vaccaros appeal.

Appellants operated the Mira Loma Turkey Ranch as a partnership business on a 5-acre tract owned by their father, David Vaccaro, Jr. The elder Vaccaro resided on the premises and permitted his sons to use the remainder of the tract in return for the payment of property taxes; he was named as a defendant in the action but was not served with process.

On April 11, 1955, plaintiffs made an appointment to purchase a turkey at the ranch. The ladies drove to the premises around noon and parked in the parking lot. They walked up a pathway to the building where turkeys were sold, but as no one was present they returned to their automobile and waited. A few minutes later, Mrs. Reynolds left the car and proceeded to walk up the pathway toward the store. One dog was lying on the ground about 15 feet away from the path. This one suddenly ran toward her, snarling and barking; it jumped up on her, whereupon the other two dogs came from somewhere and joined in the attack. Mrs. Chandler rushed to the rescue of Mrs. Reynolds, who was screaming and trying to protect herself with her handbag. Mrs. Chandler was

also attacked by the dogs. Upon hearing the commotion, appellants' father ran from the house and warded the dogs off. The ladies were taken to a physician for treatment; their clothes were torn and they were in an hysterical condition. Mrs. Chandler's injuries consisted of painful bites on her left arm and right breast, while her companion's back had been severely scratched.

The participants in the attack upon plaintiffs were three large animals, unclassified as to breed, named Poochie, Blackie and Brownie, who lived on the premises. Poochie was the female parent of the other two dogs; at the time of the assault she was between 12 and 14 years old. Appellants' father testified that he was the owner of the dogs and that he kept them as pets. They were not used as watchdogs. He and Mrs. Vaccaro fed them, looked after them and paid for their licenses. The dogs were kept around the house but they had the free run of the premises except for the turkey pens. Appellants gave similar testimony. The dogs belonged to their father and they neither cared for them nor used them as watchdogs.

The only previous incident which indicated that one of the dogs might be vicious was described by young Otto Barr. He started delivering papers to the elder Vaccaro in 1949 and made deliveries thereafter six days a week. He usually rode a motorcycle up a driveway to the front of the house. One evening at dusk, or a little later, his motorcycle being out of order, he came on a bicycle through the rear of the premises. Poochie was nursing a litter of newly born pups at a location some 400 or 450 feet to the rear of the house. As the boy came by on his bicycle Poochie ran out and bit him on the leg. The incident was known to the father and mother of appellants and also to James Vaccaro. After that occurrence the boy rode in on his motorcycle regularly and encountered the dogs. As he would ride away two of the dogs would sometimes run behind him and snap at the rear tire. They never attempted to bite him.

Poochie had had eight or nine litters, which were given away as soon as they were weaned. While they were with her she guarded them against strangers. There was no expression of hostility toward anyone after the pups were taken away, nor did she make any objection to their being taken. Some two months before the injuries to plaintiffs, Poochie had given birth to another litter. All had been given away except Brownie. Blackie was from an earlier litter. During the

five years between the Barr incident and plaintiffs' encounter with the dogs large numbers of customers came to buy turkeys. At holiday times there would be 1,500 and 2,000 customers, and Mrs. Chandler and Mrs. Reynolds had purchased turkeys at the ranch on numerous occasions without incident. At these times and at all other times the dogs would walk among the customers and visitors in friendly fashion, disturbing no one. And after the Barr incident, while Poochie was nursing her numerous litters, she had attacked no one. As described by David Vaccaro, she was regarded as "just a general dog."

To hold upon the evidence that prior to the attack upon plaintiffs Poochie had been a vicious animal and known to be vicious would not only be without precedent in law but contrary to common experience and good sense. It would impose a liability upon those who harbor dogs for any harm they do, upon the theory that the instinct of a female animal to guard her young from harm renders her a vicious and dangerous animal and imparts notice to the owner of her vicious character. It is not the desire to harm intruders that causes the animal to threaten or attack them; it is merely fear for the safety of her young and the desire to be let alone. Even the most gentle animals may suffer from such fear. And who with a mature mind and a mere scintilla of understanding of dogs or other animals would agree with the statement "This is a vicious dog; she would not let me handle her pups." The Vaccaro dogs suddenly became vicious; why no one knows. There was no provocation. Dogs, like humans, are unpredictable. Either, for no apparent reason, may suddenly go berserk.

The common-law liability did not extend to injuries inflicted by dogs that had previously been gentle and friendly. It was a common remark that the law allowed every dog his first bite, which was true of dogs of previous gentle disposition. But the injustice of this rule was recognized by our Legislature when, by statutes 1931, page 1095, chapter 503, liability was imposed upon owners for injuries inflicted by dogs that had previously exhibited no vicious tendencies. This law became section 3342, Civil Code, in 1953.

The conditions which impose common law liability upon those who own or harbor dogs must be such as to reasonably indicate the probability of injury, due to the disposition of the dogs. If a dog has been gentle and friendly in the past there is no duty to fear that he may suddenly become vicious. If, in the past, he has bitten a human the owner

must anticipate that he will do the same thing again under the same or similar conditions. The question is one of the duty of the person who is responsible for the dog's actions. ▮ If a bitch is likely to attack intruders when she is nursing pups there is a duty at those times to take precautions to avoid injury to humans. (Rest., Torts, § 518, comment g.) It was a wise precaution to put Poochie and her pups 400 or more feet behind the house, where visitors would not disturb them. But when the pups had been weaned and sent away and Poochie had no further responsibility (and she had borne more than a fair share of responsibility as a parent), defendants had a right to anticipate that she and the young dogs would be as friendly with visitors as they had been in the past. ▮ An exhaustive search of the authorities which we have made has unearthed no case in which it was even contended, much less held, that a bitch may be proven to be vicious solely by evidence that in chasing an intruder away from her nursing pups she bit him. The fact that young Barr was bitten under the circumstances related was wholly insufficient to prove that Poochie was vicious or to reasonably indicate that she was likely to resent the presence of visitors under different conditions.

▮ It is well known that some dogs, untutored in behavior, make a sport of chasing cars or motorcycles with no intention of doing injury. Until the dog has bitten or attempted to bite someone his actions must be regarded as playful and not vicious. Otherwise, as the court stated in *Mellicker* v. *Sedlacek*, 189 Iowa 946 [179 N.W. 197, 11 A.L.R. 259]), "nearly every farmer in Iowa owning a shepherd dog would be liable several times a year."

▮ The fact that two of the dogs sometimes chased Barr as he left on his motorcycle and snapped at the rear tire did not prove that they were vicious. He explained that the motor "would have a tendency to pop when I would lean on the hand throttle." If defendants had knowledge of these occurrences they were bound to know that two of the dogs would chase popping motorcycles. Whatever the game may have been, it evidently did not cause the boy to fear the dogs. They could have bitten him if they had wanted to. The fact that they didn't bite him is the best evidence that they were not interested in biting him. Motorcycles evidently excited them but that had nothing to do with their attitude toward people. Over a period of five years after the Barr incident the dogs displayed no animosity toward people,

although they had mingled with thousands, including the plaintiffs. They behaved normally. They gave the defendants no reason to fear they might injure anyone. The uncontroverted evidence failed to establish that prior to plaintiffs' encounter with the dogs any of them had been vicious. Other contentions of appellants need not be considered.

The judgment is reversed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied March 6, 1959, and respondents' petition for a hearing by the Supreme Court was denied April 8, 1959.