[Civ. No. 59683. Second Dist., Div. Two. Aug. 31, 1981.]

LORRAINE NAVA, a Minor, etc., Plaintiff and Appellant, v. YVONNE GAYLE McMILLAN et al., Defendants and Respondents.

**COUNSEL**

Yagman & Yagman and Stephen Yagman for Plaintiff and Appellant.

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup, William K. Koska, Jerry M. Custis, Murchison & Cumming, Bonnie S. Bass and Robert G. Loken for Defendants and Respondents.

**OPINION**

BEACH, J.—Plaintiff appeals from an order of dismissal entered after the trial court sustained defendants Nelson's and Sarkozy's demurrer to the first amended complaint, without leave to amend. We affirm.

BACKGROUND:

Plaintiff Lorraine Nava, a teenaged minor, through her guardian ad litem brought a personal injury action against defendants Yvonne McMillan, Elma Nelson,[1] Alexander M. Robertson, and Julius Sarkozy. In the first cause of action of her "First Amended Complaint for Personal Injuries (Negligence, Strict Liability)," plaintiff alleged that

---

[1]Two months or so after the filing of the first amended complaint, the estate of Elma Nelson was substituted as a defendant in the place of the deceased Elma Nelson.

on February 14, 1978, she sustained injuries after being struck, while a pedestrian on Burnet Avenue in the County of Los Angeles, by an automobile negligently driven by defendant McMillan. In her second and third causes of action, plaintiff alleged that she stepped from the sidewalk into the street, causing her to be hit by the McMillan vehicle, after being frightened by dogs "of a vicious disposition" which were kept behind a chain link fence on the respective properties of defendants Nelson and Sarkozy. Plaintiff alleged that the injuries she sustained after being struck by the McMillan vehicle were the "direct and proximate result of the negligence, recklessness and carelessness" of defendants Nelson and Sarkozy, who failed to restrain their dogs though they knew or should have known of the dogs' vicious disposition. As to defendant Robertson, plaintiff alleged in her fourth cause of action that his negligent maintenance of bushes and shrubs on the common sidewalk in front of his property caused her to leave the sidewalk and to enter the street, where she was subsequently struck by the McMillan vehicle. Plaintiff's fifth cause of action against "Does 56 through 80" alleged that the dangerous condition in which those unnamed defendants maintained their property caused plaintiff to leave the sidewalk and to enter the street.

The trial court sustained defendants Nelson and Sarkozy's demurrer, without leave to amend, and ordered the action as to them dismissed. Plaintiff appeals, claiming the trial court erred in sustaining the demurrer. Neither defendant McMillan nor defendant Robertson is a party to this appeal.

DISCUSSION:

A demurrer reaches only those defects which appear on the face of the complaint or which are judicially noticeable. (*Richard P. v. Vista Del Mar Child Service* (1980) 106 Cal.App.3d 860, 865 [165 Cal.Rptr. 370]; *Johnson Rancho etc. Dist. v. County of Yuba* (1963) 223 Cal. App.2d 681, 684 [35 Cal.Rptr. 828].) It admits all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

As far as we have been able to determine, no appellate court, either in or outside this state, has published a decision dealing with the precise issue presented here, namely, the imposition of tort liability upon an

owner of a dog whose mere appearance or barking[2] allegedly causes a passerby, who is completely separated from the dog by a chain link fence, to leave the sidewalk and to enter the street, where she is then struck by an automobile.

An essential element of tort liability is the existence of a legal duty, which has been breached by a defendant. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 5, p. 2306.) The question of whether such a duty exists is a question of law. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737].)

Though in most instances negligence is caused by heedlessness or carelessness, it may also exist where the actor has considered the possible consequences carefully and has exercised his own best judgment. The real basis for negligence, therefore, is not carelessness, but behavior which society in general views as involving an unreasonable risk of harm to others. (Prosser, Torts (4th ed. 1971) § 31, p. 145.) To determine whether a duty exists, the following factors must be weighed: the foreseeability of harm, the degree of certainty of injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Hale* v. *George A. Hormel & Co.* (1975) 48 Cal.App.3d 73, 86-87 [121 Cal.Rptr. 144].)

The complaint at bench failed to allege the nature of conduct engaged in by the dogs which caused plaintiff to become frightened; it alleged merely that, while walking on a sidewalk, plaintiff "encountered" some dogs in the fenced-in yards of defendants Nelson and Sarkozy, and became "scared and frightened" by the dogs, causing her to go into the street, where she was then struck by an automobile. In any event, even if the dogs had been barking or jumping against the fence which separated them from the sidewalk, such activities are quite common for a dog. (See and compare *Hagen* v. *Laursen* (1953) 121 Cal.App.2d 379 [263 P.2d 489]; *Chandler* v. *Vaccaro* (1959) 167 Cal.

---

[2]The complaint did not allege that the dogs either barked at plaintiff or jumped at the fence.

App.2d 786, 790 [334 P.2d 998].) Here, the dogs did not jump over the fence of the premises at which they were kept; they remained behind it, never touching plaintiff. ■ It is an integral part of our whole system of private property that an owner or occupier of land has a privilege to use the land according to his own desires. This privilege is of course qualified by a due regard for the interests of others who may be affected by it. The possessor thus has a duty to make only a reasonable use of his property, without causing unreasonable risk of harm to others in the vicinity. (Prosser, Torts, *supra*, § 57, p. 351.) The measure of care with respect to animals is the same. In this particular instance, defendants could not reasonably foresee that the mere appearance of the dogs at the fence or their barking might cause plaintiff, who was on the public side of the fence, to become frightened and to run into the street where she was subsequently struck by an automobile.

Our conclusion on the unforeseeability of harm in this case also applies to the factors of certainty of injury and closeness of the connection between the defendant's conduct and the injury suffered. Also, no moral blame can be attached to defendant dog owners here as they kept the dogs on premises completely surrounded by chain link fencing. Needless to say, the consequences upon the community of imposing a duty as suggested by plaintiff would be totally unreasonable: the owner of a dog would in effect be required to keep "man's best friend" in a place where it could neither be seen nor heard by members of the public passing by. In short, the duty sought to be imposed by plaintiff offends common sense.

Having considered the issue of simple negligence and concluded that plaintiff's first amended complaint failed to allege facts giving rise to a duty on the part of defendant dog owners towards plaintiff, we now turn to the complaint's allegation of strict liability on the part of defendant dog owners.

The duty of a land owner or possessor of land to exercise ordinary care in the management of his property usually does not extend to persons outside the land, on adjacent property, or on a sidewalk or highway. An exception to this general rule exists where the physical harm caused to persons outside the land is a result of dangerous activities conducted on the land, in which event a defendant is held strictly liable for the harm done. (4 Witkin, Summary of Cal. Law, Torts, *supra*, pp. 2841, 3095.) This strict liability rule has been interpreted in many cases as being confined to things or activities which are abnor-

mal, extraordinary, or exceptional, and not applicable to the usual and normal. (Prosser, Torts, *supra*, § 78, p. 506.) Certainly, there is nothing inherently dangerous in the ownership of a dog which is kept securely behind a fence.

The fact that it is fenced does not necessarily imply the dog is so unusually fearsome that liability is incurred by the owner to one frightened by such dog. Similarly, the allegation here that the dogs were "of vicious propensity and disposition" adds nothing to plaintiff's claim. There is no allegation explaining in what particular way the dogs were vicious and that the dogs acted in that same way in plaintiff's presence on this occasion. Here, plaintiff alleged in her complaint merely that she became frightened after "encountering" the dogs. There was no factual allegation as to the nature of the dogs' conduct that caused her to be frightened. In any event, even if the dogs had been barking or jumping against the fence behind which they were kept, those are harmless activities ordinarily associated with, and expected from, dogs.

Keeping a pet dog is undoubtedly one of the most cherished forms in which the constitutionally protected right to own personal property is exercised. To most people it is more than ownership of mere personal property. More than once courts have recognized that the keeping of such pets "is such an important part of our way of life" (*Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 514 [118 Cal.Rptr. 741, 81 A.L.R.3d 628]), and have recognized the perhaps sentimental but nonetheless universally strong affection of mankind for the dog. (*Sabin* v. *Smith* (1915) 26 Cal.App. 676 [147 P. 1180]; *Roos* v. *Loeser* (1919) 41 Cal.App. 782 [183 P. 204].) By statute (Civ. Code, § 3342) the common law "one bite" rule was changed and dog owners were made liable for harm caused by the bites of their pets. This liability for bites attaches irrespective of any prior good behavior or propensity to bite whether known or unknown. But this statutory rule did not otherwise change the favored status of dogs in the life of the community nor make the keeping of pet dogs an activity accompanied with strict liability. The status of the dog as "man's best friend" remains and the liability of its master remains determined by the general common law tort principles described earlier. (*Frederickson* v. *Kepner* (1947) 82 Cal.App.2d 905 [187 P.2d 800]; *Hicks* v. *Sullivan* (1932) 122 Cal.App. 635 [10 P.2d 516].) Unlike a grizzly bear, which is a wild and dangerous animal, the dog is a domesticated animal whose occasional presence in homes and neighborhoods is to be expected. Apart from the risk of statutory liability for its bite, the keeper of a dog does not incur the risk of

strict liability as does the keeper of a grizzly. These rules make sense and are fair. On the other hand, the only rule by which plaintiff could recover under the facts pleaded here would be a rule imposing liability upon the owner of a fenced dog, which by its mere presence frightens a passerby, irrespective of any conduct of the dog and irrespective of any unreasonable or excessive timidity on the part of the passerby. Such a rule would be unreasonable and unfair. The idea is totally at odds with the present standards which strike a reasonable balance between the lawful enjoyment of pets by their owners and the personal security of others.

We conclude that plaintiff, in her first amended complaint, has failed to set forth facts giving rise to tortious liability on the part of defendants Nelson and Sarkozy, either on a theory of simple negligence or strict liability.

The judgment (order of dismissal) is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 12, 1981.