# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CYNTHIA E. MCGRELLIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N17C-01-401 PRW |
| | ) | |
| JAMES BROMWELL and | ) | |
| JENNIFER BROMWELL, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: March 14, 2019
Decided: March 29, 2019

## <u>OPINION AND ORDER</u>

*Upon Defendants James Bromwell and Jennifer Bromwell's*
*Renewed Motion for Directed Verdict,*
**GRANTED.**

Plaintiff, Cynthia E. McGrellis, *Pro se*.

Melissa L. Rhoads, Esquire, Tighe & Cottrell, P.A., Wilmington, Delaware, Attorney for Defendants.

**WALLACE, J.**

## I.  INTRODUCTION

This is a personal injury case that has been tried before a jury.[1]  At the close of Plaintiff Cynthia E. McGrellis's case in chief, Defendants James and Jennifer Bromwell moved for a directed verdict on Ms. McGrellis's sole negligence claim.[2] The Court denied the Bromwells' motion without prejudice with leave to renew.[3] The jury could not reach a unanimous decision and the Court declared a mistrial.[4] The Bromwells have now filed a Renewed Motion for Directed Verdict under Superior Court Civil Rule 50(b).[5]

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Parties, Their Dogs, and This Suit.*

The Bromwells live on Balmore Lane in the neighborhood of Highland West.[6] On December 31, 2016, Ms. McGrellis, an around-the-corner neighbor, was injured while walking her leashed dog, Riley, along the center of Balmore Lane.[7]  That

---

[1]     Civil Trial Activity Sheet (Oct. 16, 2018) (D.I. 94).

[2]     Trial Tr. at 28-30 (Oct. 15, 2018) (D.I. 96) [hereinafter "Oct. 15 Trial Tr."].

[3]     *Id*. at 31-34.

[4]     Trial Tr., at 16-17 (Oct. 16, 2018) (D.I. 97) [hereinafter "Oct. 16 Trial Tr."].

[5]     Defs.' Renewed Mot. for Directed Verdict (Oct. 26, 2018) (D.I. 98) [hereinafter "Defs.' Mot."]; *see also* Super. Ct. Civ. R. 50(b).

[6]     Defs.' Answ. to Pl.'s Compl. ¶ 2. (Mar. 13, 2017) (D.I. 8) [hereinafter "Defs.' Answ."].

[7]     Pl.'s Compl. ¶¶ 3, 8 (Jan. 23, 2017) (D.I. 1) [hereinafter "Pl.'s Compl."].

afternoon, as Ms. McGrellis and Riley passed the Bromwells' home, Tara, a dog the Bromwells had been fostering for a few weeks, exited the house through the front storm door.[8] Moments later, Ms. McGrellis fell to the street and sustained a serious shoulder injury.[9] Neither Ms. McGrellis nor Riley entered upon the Bromwells' property at any point.[10] And no evidence suggests Tara traveled beyond the bounds of the Bromwells' property.[11]

In January, 2017, Ms. McGrellis, through counsel, brought suit against both Mr. Bromwell and Mrs. Bromwell to recover damages for her personal injuries, alleging causes of action sounding in strict liability under 16 *Del. C*. § 3053F, and negligence.[12] By the time trial commenced, Ms. McGrellis was proceeding *pro se*

---

[8]     Oct. 15 Trial Tr. at 35-39.

[9]     No doubt, Ms. McGrellis's injuries were severe and painful. She suffered a shoulder fracture that required surgical repair and a long period of recovery and rehabilitation. Pl.'s Compl. ¶¶ 7-9; Oct. 15 Trial Tr. at 11-14.

[10]    Oct. 15 Trial Tr. at 16, 42.

[11]    *Id*. at 18-19.

[12]    Pl.'s Compl. Captioned "Liability of dog owner for damages," 16 *Del. C*. § 3053F provides:

> The owner of a dog is liable in damages for any injury, death, or loss to person or property that is caused by such dog, unless the injury, death, or loss was caused to the body or property of a person who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, or was committing or attempting to commit a criminal offense against any person, or was teasing, tormenting, or abusing the dog.

and had withdrawn her § 3053F claim.[13]

In her complaint, Ms. McGrellis alleged that the Bromwells' negligent failure to secure Tara within their residence was the proximate cause of her fall and the resulting injuries.[14] The Complaint states that Tara exited the Bromwells' house and ran in the direction of Ms. McGrellis and Riley as they were walking by on Balmore Lane.[15] Ms. McGrellis continued to hold onto Riley's leash when she was "pulled by [Riley], who was startled and trying to flee."[16] It was this, the Complaint says, that caused Ms. McGrellis to lose her balance and fall in the street.[17]

The Complaint alleges that the Bromwells negligently: (i) failed to secure Tara within their residence; (ii) failed to secure Tara when they heard her bark and cause a commotion as Ms. McGrellis and Riley walked near the residence; (iii) failed to secure the main door to their residence to prevent Tara from exiting; and (iv) failed to secure their storm door to prevent Tara from exiting the home.[18] In their Answer, the Bromwells denied the Complaint's allegations and asserted a

---

[13]    *See* Tr. of Pretrial Conference at 16 (Oct. 15, 2018) (D.I. 108).

[14]    Pl.'s Compl. ¶ 12.

[15]    *Id*. ¶¶ 4, 6.

[16]    *Id*. ¶ 6.

[17]    *Id*. ¶¶ 6-8.

[18]    *Id*. ¶ 12.

-4-

number of defenses including, *inter alia*: Ms. McGrellis failed to state a claim for relief, and Ms. McGrellis's comparative negligence barred recovery for her claims.[19]

> **B. The Trial Testimony of the Only Two Eyewitnesses as to How Ms. McGrellis Was Hurt.**

At trial, Ms. McGrellis testified that as she and Riley walked in the middle of the street past the Bromwells' home, Tara "bolt[ed] out of the door like a missile and came at [her] and [her] dog."[20] Ms. McGrellis testified that she fell down onto the street as soon as she saw "black fur coming at [her]."[21] On cross-examination, Ms. McGrellis testified that she was still holding on to Riley's leash when she went down, but she is unsure of whether Riley pulled her to the ground.[22]

Mr. Bromwell was also a trial witness. Mr. Bromwell testified that he was inside his house with his two dogs (one of which was Tara) when they began to bark.[23] Mr. Bromwell said that when he checked at the front door to see what prompted the barking, Tara "nosed her way outside."[24] Mr. Bromwell testified that

---

[19] Defs.' Answ. at 3.

[20] Oct. 15 Trial Tr. at 7.

[21] *Id*. at 7-8.

[22] *Id*. at 16-17.

[23] *Id*. at 40.

[24] *Id*.

when he came outside to retrieve Tara, he saw Ms. McGrellis walking Riley in the street; Riley, he observed, "was bucking."[25] Mr. Bromwell testified that Tara never made it any further than "the edge of [his front] step" before he "bent down, grabbed her, turned around, went back, put her inside the door, secured the door, and then came back for Ms. McGrellis."[26] When he returned to check on Ms. McGrellis, Mr. Bromwell saw her lying on the ground.[27]

## C.   The Parties' Questions Posed to the Jury.

At the close of the case, the Court instructed the jury that Ms. McGrellis must prove all the elements of her negligence claim against the Bromwells by a preponderance of the evidence.[28] These elements were explained to the jury as follows:[29]

(1)   That the Bromwells were negligent in securing or controlling their dog, Tara; and

(2)   That Ms. McGrellis sustained damages that were proximately caused by the Bromwells' negligence.

The jury was also instructed that the Bromwells, having pleaded comparative

---

[25]     *Id*. at 39.

[26]     *Id*. at 39, 42.

[27]     *Id*. at 43.

[28]     Charge to the Jury at 6 (Oct. 15, 2018) (D.I. 95).

[29]     *Id*.

negligence, must prove the following elements of that defense by a preponderance of the evidence:[30]

> (1) That Ms. McGrellis was negligent in her failure to maintain a proper lookout, to maintain control of her person, or to maintain control her own dog; and
>
> (2) That Ms. McGrellis's negligence was a cause of her own injury and, therefore, she was contributorily negligent.

The verdict form required the jury answer the following questions, in relevant part:[31]

> (1) Were the Bromwells negligent in a manner that proximately caused Cynthia McGrellis's alleged injuries?
>
> (2) Was Cynthia McGrellis comparatively negligent in a manner that proximately caused her alleged injuries?

The jury was unable to reach an agreement and, as a result, the Court declared a mistrial.[32]

---

[30]   *Id*. at 6-7.

[31]   *Id*. 40-41.

[32]   Oct. 16 Trial Tr. at 17.

## III.   STANDARD OF REVIEW

### A.   *Deciding a Renewed Motion for Directed Verdict.*

Motions for directed verdict are controlled by this Court's Civil Rule 50(a), which reads:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the Court may determine the issue against the party and may grant a motion for judgment as a matter of law. . . .[33]

Where, as here, the Court denies a mid-trial motion, Rule 50(b) allows the motion to be renewed post-trial.[34] Viewing the evidence in the light most favorable to the non-moving party, the Court must then determine "whether the evidence and all reasonable inferences that can be drawn therefrom could justify a jury verdict in favor of the Plaintiff."[35] But the Court must be always mindful that it is ever the Plaintiff's burden to establish a prima facie basis for recovery as to all elements of

---

[33]   Super. Ct. Civ. R. 50(a).

[34]   Rule 50(b) provides, in relevant part:

> Whenever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the Court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. . . . If no verdict was returned, the Court may, in disposing of the renewed motion, direct the entry of judgment as a matter of law or may order a new trial.

[35]   *Mumford v. Paris*, 2003 WL 231611, at *2 (Del. Super. Ct. Jan. 31, 2003) (internal quotations omitted).

her claim.[36]

"To be held liable in negligence, a defendant must have been under a legal obligation—a duty—to protect the plaintiff from the risk of harm which caused h[er] injuries."[37] Whether a legally cognizable duty exists "is entirely a question of law, to be determined by reference to the body of statutes, rules, principles and precedents which make up the law; and it must be determined by the court."[38] If no duty exists, this Court "is authorized to grant judgment as a matter of law."[39]

### B. Prima Facie Negligence Claim – Plaintiff's Burden.

Negligent behavior is ordinarily defined as the failure to meet the standard of care that the law requires.[40] Where a plaintiff fails to establish a prima facie case of negligence, a defendant is entitled to judgment as a matter of law.[41] A prima facie claim for negligence requires a plaintiff to establish that: (1) the defendant owed

---

[36] *Farm Family Mut. Ins. Co. v. Perdue, Inc.*, 1992 WL 21141, at *2 (Del. Jan. 2, 1992) ("The existence of a mere scintilla of evidence in favor of the nonmoving party is insufficient to support a verdict; the question is not whether there is literally no evidence supporting the nonmoving party, but whether there is evidence upon which the jury could properly find a verdict for that party." (citing *Freedman v. Chrysler Corp.,* 564 A.2d 691, 695 (Del. Super. Ct. 1989))).

[37] *Fritz v. Yeagher,* 790 A.2d 469, 471 (Del. 2002).

[38] *Id*.

[39] *Id.* (citing Super. Ct. Civ. R. 50).

[40] *Furek v. Univ. of Del.*, 594 A.2d 506, 516 (Del. 1991).

[41] *Pipher v. Parsell*, 930 A.2d 890, 892 (Del. 2007).

plaintiff a duty of care;  (2) the defendant breached that duty;  (3) the defendant's breach was the proximate cause of plaintiff's injury;  and (4) the plaintiff incurred damages as a result of the defendant's breach.[42]

## IV. DISCUSSION

*Allowing a Dog Into One's Own Yard to Run and Bark Violates No Recognizable Duty to Guard Those Passing on an Adjoining Public Way from Physical Injury.*

Ms. McGrellis suggests the Bromwells were negligent by failing to adequately secure their dog within their residence.[43]  Yet, Ms. McGrellis concedes that there is no authority requiring a dog owner keep his dog secured inside of his residence. Still, she says, the Bromwells had a duty to supervise Tara to be sure the dog did not exit the residence, run toward the street, and possibly disturb others from its own front yard.[44]

The Bromwells argue there is no duty as a matter of law requiring that they, as dog owners, secure the door of their residence and prevent their dog from exiting the residence and entering the front yard.[45]  Too, the Bromwells say, Ms. McGrellis has produced no authority to support her theory that "a dog cannot exit its house

---

[42]    *See Campbell v. DiSabatino*, 947 A.2d 1116, 1117 (Del. 2008).

[43]    Pl.'s Compl. ¶ 4;  Pl.'s Resp. to Defs.' Mot. at 2 (Nov. 21, 2018) (D.I. 101).

[44]    *See* Oct. 15 Trial Tr. at 31.

[45]    Defs.' Mot. at 6.

accompanied by its owner and move about the front lawn of the property" – even if quickly and loudly.[46]

Again, "[i]n order to be held liable in negligence, defendants had to have been under a legal obligation—a duty—to protect [Ms. McGrellis] from the risk of harm which caused h[er] injuries."[47] "Generally, to determine whether one party owed another a duty of care, [Delaware Courts] follow the guidance of the Restatement (Second) of Torts."[48] Ms. McGrellis has not directed the Court to any provision of the Restatement supporting her position. Nor has Ms. McGrellis demonstrated a "special relationship" - between either Mrs. Bromwell and Ms. McGrellis or Mr. Bromwell and Ms. McGrellis - that would justify imposing a duty on the Bromwells

---

[46] *Id*.

[47] *Bryant v. Delmarva Power & Light Co.,* 1995 WL 653987, *2 (Del. Super. Ct. Oct. 2, 1995) (citing *Murphy v. Godwin,* 303 A.2d 668, 674 (Del. Super. Ct. 1973) (in which this Court observed that liability for negligent nonfeasance may be found only where relationship between the parties is of such a character that social policy justifies imposition of a duty to act); *Price v. E. I. DuPont De Nemours & Co.*, 26 A.3d 162, 173 (Del. 2011) (Berger, J., dissenting) ("Nonfeasance is 'a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do.'").

[48] *Riedel v. ICI Ams. Inc.*, 968 A.2d 17, 20 (Del. 2009).

to control the conduct of their dog while within the bounds of their property.[49]

Moreover, in view of the facts presented, the Court is unaware of any basis in Delaware law upon which to impose a heightened duty upon the Bromwells to Ms. McGrellis.[50]

Absent any basis for a heightened duty, "each person owes a duty to those who may foreseeably be harmed by his or her action to take such steps as a reasonably prudent person would take in similar circumstances to avoid such harm to others."[51]  In other words, "[o]ne has a duty to act as a reasonably prudent person would act."[52]

---

[49]     *See Rahaman v. J.C. Penney Corp.*, 2016 WL 2616375, at *8 (Del. Super. Ct. May 4, 2016) ("In negligence cases alleging nonfeasance, or an omission to act, there is no general duty to others without a 'special relationship' between the parties.").  Restatement (Second) of Torts § 314A provides a non-exhaustive list of special relationships that give rise to an affirmative duty, including common carrier/passenger, innkeeper/guest, and possessor of land/invited entrant.  In this case, the Court can discern no special relationship that would impart a duty on the Bromwells to protect Ms. McGrellis from the harm allegedly created by the Bromwells which brought about her injuries.

[50]     *Cf. Furek v. Univ. of Del.*, 594 A.2d 506, 522 (Del. 1991) ("[A]lthough the University no longer stands *in loco parentis* to its students, the relationship is sufficiently close and direct to impose a duty under Restatement § 314A."); *Naidu v. Laird*, 539 A.2d 1064 (Del. 1988) (finding a special relationship between a psychiatrist and his patient which, in some situations, gave rise to a duty to control his patient); *Murphy v. Godwin*, 303 A.2d 668, 674 (Del. Super. Ct. 1973) (holding that a doctor has an affirmative duty to his patient where a doctor-patient relationship is shown to exist).

[51]     *Harris v. Carter*, 582 A.2d 222, 234-35 (Del. Ch. 1990) (identifying this core principle of "established American legal doctrine" that "arises from the law of torts" and discussing its utility in the corporate dispute before the Chancellor).

[52]     *Delmarva Power & Light Co. v. Burrows*, 435 A.2d 716, 718 (Del. 1981).

Consistent with the Restatement, Delaware courts incorporate the principle of foreseeability to delineate one's duty.[53] Thus, whether the law will impose a duty on the Bromwells will turn on whether the harm to Ms. McGrellis was foreseeable —whether reasonable persons in the Bromwells' position should have recognized that failing to keep Tara from nosing out their front door to run some short distance into their front yard could create an "unreasonable risk" of bodily injury to an off-premises bystander or passerby. In the context of a negligence claim, Delaware courts determine the existence of an "unreasonable risk" by analyzing whether the risk of a particular consequence is "sufficiently great to lead a reasonable [person] to anticipate them, and to guard against them."[54] Comment g to Section 290 of the Restatement provides that "[a] reasonable [person] is required to have such knowledge of the habits of animals as is customary in his community."[55]

At trial, Ms. McGrellis testified that Tara's conduct caused her to become frightened because Tara barked and came out of the Bromwells' front door by

---

[53]  *See Burrows*, 435 A.2d at 718 ("[O]ne's duty encompasses protecting against reasonably foreseeable events."); *Baker v. E. Coast Properties, Inc.*, 2011 WL 5622443, at *2 (Del. Super. Ct. Nov. 15, 2011) ("In defining the parameters of one's duty, the Court has incorporated the principle of foreseeability.").

[54]  *Burrows*, 435 A.2d at 719 (internal quotation marks omitted).

[55]  Restatement (Second) of Torts § 290, cmt. g (1965).

forcing it open with her nose.[56]  Ms. McGrellis has always said that she does not know exactly what happened after Tara exited the Bromwells' residence because she "just went down" once she saw "the black furry dog."[57]  But Ms. McGrellis did not see Tara around her when she was lying in the street following the fall, nor did she find any evidence that Tara actually left the Bromwells' yard or made contact with her or Riley.[58]

In short, the worst that can be said of the Bromwells' alleged failures is that they allowed Tara to "bolt[] out" of their front door, unleashed, into their own yard, and some distance toward the street.  When that happened, the worst that can be said of Tara's involvement is that she may have spooked Riley and Ms. McGrellis.[59]  If such is the case, the Bromwells breached no reasonably recognizable duty to Ms. McGrellis.[60]  There is, as a matter of law, no duty owed by a dog owner to an off-premises passersby to keep his or her dog wholly unseen and unheard.  Imposing the

---

[56]     *See* Oct. 15 Trial Tr. at 7-8.

[57]     *E.g.*, *id.*

[58]     *Id.* at 18.

[59]     *See* Oct. 15 Trial Tr. at 7 ("I was almost past the barking dogs as I walked in the middle of the street, and then the black dog . . . bolts out of the door . . . .").

[60]     *See Lopez v. Trujillo*, 399 P.3d 750, 754 (Colo. App. 2016) (holding that a dog owner who kept dogs in a fenced yard did not owe a duty of care to a child on an adjacent public sidewalk who became frightened when the dogs jumped up and rattled their fence because it was not foreseeable that the child would run into the street and be struck by a vehicle), *aff'd sub nom, N.M. v. Trujillo*, 397 P.3d 370 (Colo. 2017).

duty suggested by Ms. McGrellis devises an unreasonable burden that cannot be squared with any acceptable community standard for dog owners.[61] As one sister State's court of appeals similarly observed:

> [T]he magnitude of the burden on dog owners of guarding against injury is high, as are the costs of placing any additional burdens on dog owners. The consequences upon the community of imposing a burden as suggested by plaintiff would be unreasonable: the owner of a dog would in effect be required to keep a dog in a place where it could neither be seen nor heard by members of the public passing by.[62]

The Bromwells' cannot be said, under any reasonable view, to have created an unreasonable risk of harm of bodily injury to Ms. McGrellis.[63] They could not reasonably foresee that Tara's barking, running on their own property, or mere appearance might cause Ms. McGrellis, who was on the street, to be pulled by her own dog, fall to the ground and subsequently sustain injuries.[64] A dog is a

---

[61] *See Nava v. McMillan*, 176 Cal. Rptr. 473, 476 (Cal. Ct. App. 1981) ("Keeping a pet dog is undoubtedly one of the most cherished forms in which the constitutionally protected right to own personal property is exercised. To most people it is more than ownership of mere personal property."); *id*. (observing that "[i]t is an integral part of our whole system of private property that an owner or occupier of land has a privilege to use the land according to his own desires.").

[62] *Lopez v. Trujillo*, 399 P.3d 750 at 754.

[63] *Young v. Wyman*, 566 N.E.2d 1157, 1157 (N.Y. 1990) ("[T]he mere presence of an unrestrained dog on the street does not give rise to the presumption of negligence on the part of its owner"), *affirming, Young v. Wyman*, 159 A.D.2d 792 (N.Y. App. Div. 1990).

[64] *See Nava*, 176 Cal. Rptr. at 476 (affirming dismissal of complaint bought by one walking on a sidewalk who became "scared and frightened" by dogs in a fenced yard that "caused" her to go into the street, where she was then struck by an automobile. The Court further observed that there was no foreseeable risk of harm "even if the dogs had been barking or jumping against the fence which separated them from the sidewalk, such activities are quite common for a dog.").

domesticated animal whose occasional presence is to be expected in any yard, on any street, in any neighborhood, in any community.[65] The Bromwells, as dog owners (or fosterers), simply cannot be said to have failed to exercise the care of a reasonable person to avoid an unreasonable risk of harm.[66] For these reasons, the Court finds that the Bromwells breached no duty owed to Ms. McGrellis.

---

[65] As New York's highest court recently commented:

> New York society has had no reasonable expectation that all domestic pets will be perpetually confined in their homes or physically restrained at all times. Pet owners often take their pets to public places in close proximity to other people, both on leashes and off of them depending on the location, and the people in those areas have come to expect this phenomenon and to approach such situations with caution. The average New Yorker knows or ought to know that he or she will encounter insufficiently restrained pets, which are not confined to the owner's premises . . . New York society has learned to adequately mitigate the perils of unrestrained pets by a combination of strict liability, statutory regulation and the prudence of those who approach these animals, without adopting a negligence cause of action based on the failure to supervise or restrain a domestic pet.

*Doerr v. Goldsmith*, 35 N.E.3d 796, 812 (N.Y. 2015).

[66] *See Young v. Wyman*, 159 A.D.2d 792, 793 (N.Y. App. Div. 1990) ("[D]omestic favorites such as the family dog or cat . . . [which are] emblematic of a suburban community . . . are, as a norm, frequently allowed to romp unguarded or unattended."); *Frazier v. Stone*, 515 S.W.2d 766, 769 (Mo. Ct. App. 1974) ("Barking, running loose, jumping, and lunging are activities in which all dogs engage . . . ."); *Yuzon v. Collins*, 10 Cal. Rptr. 3d 18, 30 (Ct. App. 2004) (finding that "pushing, barking, and jumping at the screen door" to be common activities of a dog).

## V.    CONCLUSION

Although it is undisputed that Ms. McGrellis was badly hurt when she fell on Balmore Lane in front of the Bromwells' house, the result in this case cannot turn simply on whether injury exists.  Nor can it depend merely on whether Tara's running in the Bromwells' yard might have been one factor that triggered that fall.  It might well have.  Rather, to prevail in her negligence action, Ms. McGrellis must be able to identify the Bromwells' legal obligation—their duty—to protect her from the risk of harm that caused her injury.  That is, some duty to keep Tara from their front yard while she and Riley passed and to recognize the risk of her injury if they failed to do so.

Whether a legally recognizable duty exists is a question of law that must first be determined by the Court.  Here the Court now has the most complete record attainable to answer that question.  And the Court must answer that question of law thusly: no duty exists.  So the Court must grant judgment as a matter of law to the Bromwells.

The Bromwells' Renewed Motion for Directed Verdict is **GRANTED**.

**IT IS SO ORDERED.**

*/s/ Paul R. Wallace*
Paul R. Wallace, Judge

-17-